Judy CAMPBELL, Plaintiff,

v.

Ricky E. PRICE, Amy L. Bradley, and Helen Rice Grinder, Defendants.

No. LR–C–97–850.

United States District Court, E.D. Arkansas, Western Division.

May 20, 1998.

Robert A. Newcomb, Little Rock, AR, for Plaintiffs.

Patty W. Lueken, Little Rock, AR, for Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT

EISELE, District Judge.

Before the Court are Judy Campbell's and Ricky Price's Motions for Summary Judgment. The Court has reviewed the parties' submissions and is ready to rule on the pending motions. For the reasons stated herein, the Court will deny plaintiff's motion for summary judgment and will grant defendant's motion for summary judgment.

### I. Background

This case follows a custody dispute between the plaintiff, Judy Campbell, and the defendant, Ricky Price, over the custody of their minor daughter, Megan. In 1993, Megan was living with her mother. (Price Aff. ¶ 1). Mr. Price asserts that Judy Campbell was not providing a suitable environment for Megan. At that time, James Campbell, plaintiff's brother, corroborated Price's contention, stating he had firsthand knowledge that Judy Campbell was verbally abusive, and that she otherwise was failing to provide her a "healthy rearing." Megan was nine years old at the time. (*Id.* ¶ 5).

On October 22, 1993, Mr. Price filed for change of custody in Pulaski County Chancery Court, and James Campbell provided an affidavit attesting to the poor conditions Megan was enduring with her mother. After Judy Campbell failed to appear for both a temporary and final custody hearing, Mr. Price was granted permanent custody of his daughter in an Order signed January 3, 1994, by Chancellor Annabelle Clinton Imber. (*See* Chancery Court documents attached to Def.'s Motion for Summary Judgment).

Megan and her mother resumed talking on the phone in 1996. (Def. Stmt. of Facts. ¶ 1). Mr. Price says he observed that his daughter would cry and become upset after talking with her mother on the telephone, that she would "mope around" and "go into her room and just sit there," and that she was "not willing to talk about what was wrong with her." (Price Aff. ¶ 9). In January of 1997, Ricky Price recorded several telephone conversations between Megan and her mother without first obtaining either's consent. (Def. Stmt. of Facts ¶ 2). He also enrolled Megan in counseling sessions. (Price Aff. at ¶ 9). Mr. Price recorded the conversations between Megan and her mother seeking to find out why his daughter was upset after speaking to her mother. (Pl. Stmt. of Facts ¶ 3).

Mr. Price disclosed the contents of some of the recorded conversations to Megan's counselor, defendant Amy Bradley. (Def. Stmt. of Facts ¶ 4). In April of 1997, Judy Campbell filed for change of custody, seeking to regain custody of Megan, and Mr. Price retained defendant Helen Rice Grinder as his attorney. (Price Aff. at ¶ 10). Mr. Price told Ms. Grinder that he had recorded the conversations, and she suggested that he cease doing so. (*Id.*). Ms. Bradley provides an uncontroverted affidavit in which she denies having disclosed the *contents* of the taped conversations to Ms. Grinder. (Bradley Aff. ¶ 3). Ms. Grinder denies listening to the tapes, and plaintiff advances no proof to the contrary. (Grinder Aff. ¶ 2). Plaintiff contends that Ms. Grinder solicited information from Amy Bradley in Chancery Court "of such a nature that it was learned from the secretly recorded conversation." (Pl. Motion for Summary Judgment). Plaintiff further contends that Bradley knowingly disclosed the contents of the phone conversations she knew were recorded without consent. (*Id.*). After plaintiff put on evidence in the second change of custody proceeding, a verdict was directed in Mr. Price's favor, and he retained permanent custody of Megan. (*See* Chancery Court Order, filed Oct. 1, 1997).

In her Complaint, plaintiff seeks damages under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520 ("Title III"), alleging that Ricky Price violated 18 U.S.C. § 2511 by intentionally intercepting and recording phone conversations between plaintiff and her daughter. She further alleges violations against Price for providing copies of the intercepted conversations to defendant Amy Bradley. Finally, plaintiff seeks damages from Bradley[1] and Grinder for the "knowing disclosure of intercepted wire communications in violation of 18 U.S.C. § 2511."

Plaintiff claims that the undisputed facts entitle her to summary judgment against all three defendants. On the other hand, defendant Ricky Price asserts that there exists no genuine issue of material fact with respect to his actions and that he is entitled to judgment as a matter of law. Therefore, he contends, "if there is no liability in [sic] the actions of Ricky Price, this lawsuit must also be dismissed against Defendants Amy Bradley and Helen Rice Grinder."

## II. Analysis

### A. Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court may grant summary judgment only when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56, *quoted in Anderson v. Liberty Lobby*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In *Lujan v. National Wildlife Federation*, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695, (1990), the United States Supreme Court stated that regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied. *Id.* (quoting *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

In *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court stated that at the summary judgment stage, the role of the district court is not to weigh the evidence and determine its truth, but rather to determine whether there is any genuine issue of fact for trial. In making this determination, the Court must view the evidence in the light most favorable to the nonmovant, affording that party the benefit of all reasonable inferences that can be drawn therefrom. *Reich v. Hoy Shoe Co., Inc.,* 32 F.3d 361, 364 (8th Cir.1994). If, under such a view of the evidence, it is clear that no more than a "metaphysical doubt" exists as to the material facts of the case and that the movant is entitled to judgment under such facts, summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. Discussion

#### 1. Applicability of Title III in Domestic Relations

The interception and disclosure of wire communications is forbidden by the Federal Wiretapping Statute, also known as Title III. Title III provides in relevant part:

(1) Except as otherwise specifically provided in this chapter any person who—

(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

(b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when—

(i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication;

\*   \*   \*   \*   \*   \*

(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communica-

---

1. The Court will liberally construe paragraph 17 of the Complaint (compare to paragraph 18) which appears to have inadvertently omitted Bradley's name.

tion, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; or

(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S.C. § 2511.

■ "The Supreme Court has stated, '[t]he purpose of the legislation * * * was effectively to prohibit * * * all interceptions of oral and wire communications, except those specifically provided for in the Act * * *.'" *Kempf v. Kempf,* 868 F.2d 970, 972 (8th Cir.1989) (*quoting United States v. Giordano,* 416 U.S. 505, 514, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974)). Furthermore, the plain language and legislative history of the statute evince no Congressional intent to exempt domestic relations. *Id.* at 973; *Thompson v. Dulaney,* 970 F.2d 744, 748 (10th Cir.1992); *Heggy v. Heggy,* 944 F.2d 1537, 1540–41(10th Cir.1991).

Although defendant correctly observes that a minority of circuits (the Second and Fifth) do not apply Title III to domestic disputes, the Eighth, Fourth, Sixth, and Tenth Circuits constitute the majority and apply Title III to domestic situations. *See Platt v. Platt,* 951 F.2d 159 (8th Cir.1989); *Kempf,* 868 F.2d at 973. However, courts have recognized the difference in a spouse surveying an adult spouse, as opposed to surveying a custodial minor child. *See Newcomb v. Ingle,* 944 F.2d 1534 (10th Cir.1991). While the Court is of the opinion that precedent does not carve out an absolute exception which would allow parents to intercept their minor children's telephone conversations, the parent-child relationship impacts the analysis of two statutory exceptions to Title III:(1) the extension phone exception, and (2) the consent exception.

### a. Consent Exception

The consent exception states that:

it shall ***not*** be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given ***prior consent*** to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d) (emphasis supplied).

The Eighth Circuit has not addressed whether parents may vicariously consent to the recording of their minor children's conversations. Other than Judge Brimmer's *Thompson v. Dulaney* opinion, the Court has found only two other cases addressing this issue, both of which granted summary judgment to defendant parents who recorded minor children's telephone conversations. *Pollock v. Pollock,* 975 F.Supp. 974 (W.D.Ky.1997)(noting the paucity of law on the issue of vicarious consent, but finding plaintiff had failed to advance evidence refuting that mother was acting in child's best interest in recording conversations); *Silas v. Silas,* 680 So.2d 368 (Ala.Civ.App.1996)(concluding that parent may tape minor child's telephone conversations when acting pursuant to a good faith belief that the child is being abused, threatened, or intimidated by another parent). The Court uncovered no cases rejecting a vicarious consent argument, and, furthermore, finds persuasive the cases allowing vicarious consent.

### b. Extension Phone Exception

Several courts have addressed this issue in the context of the exception set forth in § 2510(5)(a)(i), which allows a party to record a conversation from an *extension phone. See Scheib v. Grant,* 22 F.3d 149 (7th Cir.1994); *Newcomb,* 944 F.2d 1534; *Anonymous v. Anonymous,* 558 F.2d 677 (2d Cir.1977). Section 2510(5)(a)(i) provides in relevant part:

(5) "electronic, mechanical, or other device" means any device or apparatus which

can be used to intercept a wire, oral or electronic communication other than—

(a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business....

18 U.S.C. § 2510(5)(a)(i).

In *Scheib,* the Seventh Circuit affirmed Judge Aspen's granting summary judgment on behalf of the defendant. In his Memorandum Opinion and Order, Judge Aspen observed:

Both the Second and Tenth Circuits held that, unlike the typical circumstance of interspousal wiretapping, the interception of a minor child's telephone conversations by use of an extension phone in the family home is permitted by a broad reading of the exemption in § 2510(5)(a)(i). *Newcomb,* 944 F.2d at 1536; *Anonymous,* 558 F.2d at 679. "There is no persuasive reason why Congress would exempt a business extension and not one in the home." *Newcomb,* 944 F.2d at 1536. In support of their respective holdings, both courts noted that the legislative history of Title III revealed that Congress considered the very problem of a parent eavesdropping on a minor child within the family home. Indeed, as pointed out by the Second Circuit, the language "ordinary course of [the user's] business" was added to the House bill only after Professor Herman Schwartz testified that he feared that the original version of the bill would permit policemen and private intruders to enter others' homes and listen in on extension phones without penalty. *Anonymous,* 558 F.2d at 679. Professor Schwartz, however, did not recommend deleting the extension phone exemption altogether. To be sure, Professor Schwartz stated: "Now, we can see in certain circumstances where [the exemption] makes some sense. I take it nobody wants to make it a crime for a father to listen in on his teenage daughter or some such related problem." *Hearings on the Anti–Crime Program Before Subcomm. No. 5 of the House Judiciary Comm.,* 90th Cong., 1st Sess. 989 (1967). Both the Sec-

ond and Tenth Circuits found this statement by Professor Schwartz reflective of "the general understanding of those involved in the legislative process regarding the scope of the statute" in situations involving parental eavesdropping on a minor child via an extension telephone. *Newcomb,* 944 F.2d at 1536 n. 5; *Anonymous,* 558 F.2d at 679.

*Scheib v. Grant,* 814 F.Supp. 736, 739 (N.D.Ill.1993), *aff'd* 22 F.3d 149 (7th Cir. 1994).

### 2. Plaintiff's Motion for Summary Judgment

Plaintiff asserts that the Eighth Circuit's decision in *Platt v. Platt* "clearly puts everyone on notice that the interception of conversations between a parent and minor child were subject to the provisions of [Title III]." Plaintiff attaches the affidavit of Judy Campbell's mother, Dorothy Campbell, as evidence that "Ricky Price did not fear his wife." Dorothy Campbell asserts that Ricky Price called her in the summer of 1997. She states he informed her that Megan wanted to live with her mother and that he would let her stay for the summer. Dorothy Campbell further states that "Mr. Price never said anything to me that indicated he felt Megan was in danger from her mother." Plaintiff concludes that the Court should grant summary judgment for plaintiff on the issue of liability.

The Court will deny plaintiff's motion for summary judgment. As detailed further in this Memorandum Opinion, Title III applies to domestic relations situations. However, there is *at least* a material issue of fact on the issue of whether the extension phone exception or the consent exception applies. Therefore, summary judgment for the plaintiff is not appropriate.

### 3. Defendant's Motion for Summary Judgment

■ The Court is of the opinion that defendant Ricky Price is entitled to summary judgment under both exceptions set forth above. Certainly, recording a spouse's conversations with a non-consenting, third-party adult is "qualitatively different" from a custo-

dial parent's recording a minor child's phone conversations within the home. *Newcomb v. Ingle,* 944 F.2d 1534 (10th Cir.1991). The Court is of the opinion that Title III was not intended to apply to scenarios such as the one presently before the Court. Application of the persuasive, majority legal precedent to the undisputed material facts leads the Court to its conclusion.

■ First, the Court finds persuasive Judge Aspen's reasoning in *Scheib* with regard to the extension phone exception, and the Eighth Circuit has not found otherwise. Mr. Price has asserted that he made the recordings in question through an answering machine attached to an extension phone in his home. Plaintiff disputes that the recordings were "made on an extension phone." However, plaintiff does not dispute Mr. Price's version of *how* the recordings were made. Plaintiff has not advanced specific evidence which would create a genuine issue of fact as to the method Mr. Price used to intercept the telephone conversations.

The Court must apply the material facts to the law governing this situation. Under a reading of *Scheib,* and the case cited therein, the Court is of the opinion that the extension phone exception applies to a situation where a parent records his child's phone conversation from a phone extension within the parent's home. Because Mr. Price recorded Megan's telephone conversations from an extension phone within his home, he will not be liable under Title III. Therefore, Ricky Price is entitled to summary judgment. Because his interception of the phone calls between Judy Campbell and Megan was not improper, plaintiff's claims against the other two defendants necessarily fail.

■ Next, the Court will address consent. The three decisions cited by the Court, *Thompson, Pollock,* and *Silas,* clearly stand for the proposition that a defendant's good faith concern for his minor child's best interests may, without liability under Title III, empower the parent to intercept the child's conversations with her non-custodial parent. Judge Brimmer noted that Congress intended the consent exception to be interpreted broadly. *Thompson,* 838 F.Supp. at 1543.

■ Mr. Price was the custodial parent of Megan. Under the Arkansas law cited by defendant, a parent has the duty to protect his minor child from abuse or other harms. Furthermore, the parent must consent for the child in certain situations, such as marriage and non-emergency medical treatment. To be entitled to summary judgment, Mr. Price's intercepting the telephone conversations must have been founded upon a *good faith* belief that, to advance the child's best interests, it was necessary to consent on behalf of his minor child. *Pollock,* 975 F.Supp. at 978 (*quoting Thompson*). The test is an objective one. Therefore, to overcome summary judgment, plaintiff must come forward with specific evidence refuting Mr. Price's affidavit and creating a genuine issue of fact. *Thompson,* 838 F.Supp. at 1545.

Plaintiff has submitted the affidavit of Dorothy Campbell. Although the affidavit asserts that Ricky Price was willing to let Megan live with Judy Campbell, it fails to address his good faith belief that recording the telephone conversations was in Megan's best interests. Dorothy Campbell's affidavit provides no specific evidence as to Megan's demeanor after speaking to her mother, nor does it address Mr. Price's good faith in assessing Megan's wellbeing. A review of Mr. Price's affidavit demonstrates that he was acting in accordance with a good faith view towards Megan's best interests. The Court may not allow this case to proceed to trial absent some specific evidence refuting Mr. Price's good faith basis for consenting on Megan's behalf and recording the conversations between Megan and her mother. Therefore, summary judgment under a consent analysis is also proper.

### C. Conclusion

The Court has thoroughly canvassed this fragmented area of the law. Some guidance from Congress, the Supreme Court, or at least the Eighth Circuit, would aid in the application of this potentially broad sweeping federal statute. The Court is of the opinion that Congress did not intend to tread into the waters of domestic relations in situations such as this where a custodial parent is clearly acting in the good faith belief that his action furthers the best interests of his minor

child. However, the Court's holding should not be broadly construed. The Court has merely applied what it concludes to be the majority law on the subject to the undisputed facts established by the submissions of the parties.

 The Court concludes that Ricky Price did not improperly intercept the conversations between Judy Campbell and Megan. Title III forbids the intentional disclosure to others or use of "the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." 18 U.S.C. § 2511(1)(c) & (d). It follows, therefore, that Mr. Price's allegedly disclosing such information to the other defendants, or their subsequently disclosing such information, creates no liability. Thus, summary judgment as to defendants Amy Bradley and Helen Rice Grinder is also proper.

### III. ORDER

IT IS THEREFORE ORDERED that plaintiff Judy Campbell's Motion for Summary Judgment[2] be, and it is hereby, DENIED.

IT IS FURTHER ORDERED that defendant Ricky Price's Motion for Summary Judgment[3] be, and it is hereby, GRANTED. Plaintiff's Complaint against all three defendants must therefore be, and it is hereby, dismissed with prejudice.