**Lesa Marie WAGNER and Sandra M. Wagner, Plaintiffs,**

v.

**Robert Allen WAGNER, Defendant.**

**No. 98–1704 (DWF/AJB).**

United States District Court,
D. Minnesota.

Sept. 16, 1999.

David Gronbeck, Gronbeck Law Office, Minneapolis, MN, for plaintiffs.

Ellen Dresselhuis, Dresselhuis Law Office, New Hope, MN, for defendant.

**MEMORANDUM OPINION
AND ORDER**

FRANK, District Judge.

### Introduction

This action arises under the federal wiretapping statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. §§ 2510–2521, and its Minnesota counterpart, Minn.Stat. § 626A.01, *et seq.* Two lawsuits were commenced and have been consolidated into the present proceeding. Plaintiff Lesa Wagner sued her former husband, Defendant Robert Wagner, for civil damages, alleging that Robert Wagner taped telephone conversations between Lesa Wagner and their two minor children. Plaintiff Sandra Wagner, the emancipated daughter of Robert and Lesa Wagner, also sued her father, alleging that Robert Wagner also taped telephone conversations between Sandra Wagner and the two minor children.

The matter is currently before the Court on the Plaintiffs' Motion for Summary Judgment. The Plaintiffs assert that, as Defendant Robert Wagner has admitted to having intercepted and recorded telephone conversations between the Plaintiffs and the two minor children, there is no issue of material fact and the Plaintiffs are entitled to judgment as a matter of law. Defendant Robert Wagner asserts that he vicariously consented to the interception and

recording of the telephone conversations on behalf of the two minor children in his custody.

▮▮▮ The Court, addressing an issue that has not yet been resolved by the Eighth Circuit, adopts the vicarious consent doctrine, finding that as long as the guardian has a good faith, objectively reasonable belief that the interception of telephone conversations is necessary for the best interests of the children in his or her custody, the guardian may vicariously consent to the interception on behalf of the children. As there is a factual issue as to whether Defendant Robert Wagner had a good faith, objectively reasonable belief that the interception and recording of the Plaintiffs' telephone conversations with the children was necessary for the children's best interests, the Plaintiffs' Motion for Summary Judgment is denied.

### Background

The facts are not in dispute. Robert and Lesa Wagner were married from 1977 until 1998 and have four minor children: J.W. (now 17), C.W. (now 13), and twins A.W. and T.W. (now 11). Their oldest child, Plaintiff Sandra Wagner, had been emancipated prior to the dissolution proceeding.

The dissolution proceeding came on for trial before the Honorable Mary L. Davidson in Hennepin County District Court. In its Amended Findings of Fact, Conclusions of Law, Order for Judgment and Judgment and Decree, entered on January 15, 1998, the court made the following findings regarding the determination of custody:

1. *Wishes of parents.* .... Respondent [Lesa Wagner] has not shown that she is willing to cooperate with Petitioner [Robert Wagner] in setting schedules for the children. Petitioner's [Robert Wagner's] proposal would allow the children to continue to have both parents substantially participate in their lives.

2. *Preference of children.* The children in this matter are old enough to express their preference for one parent or the other as their custodial parent. However, the children in this matter have been pressured, manipulated and influenced by both parents in regard to their preference for a custodial parent....

....

4. *Intimacy between parent and child.* .... Based on both custody evaluations the children seem to be more intimately attached to the Respondent [Lesa Wagner]. As one evaluator explained, this may be because she is less of a disciplinarian, and there is less structure in her home.... Respondent [Lesa Wagner] is unwilling or unable to see that the children are in need of counseling at this time.

5. *Interactions and interrelationship of children and parents, siblings and any other person.* .... Petitioner [Robert Wagner] has made it clear that he wants Respondent [Lesa Wagner] to be involved in the lives of the children and will encourage a relationship....

....

8. *Mental and physical health of all individuals involved.* The custody evaluator from Hennepin County found that, "[b]eneath the surface of the well-behaved and polite children is a family in crisis", and that, "[t]here is a great deal of emotional strain in the relationships between the parents and the children"

....

....

12. *Disposition of each parent to encourage and permit frequent and continuing contact by the other parent with children.* Testimony was heard regarding several incidents where Respondent [Lesa Wagner] undermined Petitioner's [Robert Wagner's] visitation with the children. She often enticed one or more of the children to stay back with her when they were to have visitation with their father. She has suggested moving out of state permanently, and took the children to Iowa for a period of time

without notifying Petitioner [Robert Wagner] of her intentions.

Petitioner [Robert Wagner] suggests that the parties should have close to equal time with the children. There is no evidence that Petitioner [Robert Wagner] has undermined Respondent's [Lesa Wagner's] relationship with the children. Rather, Petitioner [Robert Wagner] has made efforts to ensure that the children will have continued interaction, support and guidance of both parties.

(Def.'s Ex. A, Amended Judgment and Decree, dated January 15, 1998, pp. 3–7.)

The dissolution matter was eventually appealed to the Minnesota Court of Appeals. *Wagner v. Wagner*, 1999 WL 431139 (Minn.Ct.App. June 29, 1999). The Court of Appeals set forth the remaining procedural history of the case as follows:

> [T]he district court initially awarded the parties joint physical custody of all four children. But after hearing the parties' post-trial motions, the district court altered the award to give respondent [Robert Wagner] legal custody of all four children and custody of the twins [A.W. and T.W.], then 9, while appellant [Lesa Wagner] had legal custody of J.W., then 15, and C.W., then 12 Appellant [Lesa Wagner] now seeks sole legal and physical custody of all four children.
>
> The district court acknowledged that split custody is not favored but found it to be in the best interests of these children because (1) appellant [Lesa Wagner] had turned J.W. and C.W. against respondent [Robert Wagner], (2) J.W. and C.W. refused to live with respondent [Robert Wagner], (3) the children assign primarily negative feelings toward one another....

*Wagner v. Wagner*, 1999 WL 431139 at *1.

The Minnesota Court of Appeals affirmed the district court's rulings. *Wagner v. Wagner*, 1999 WL 431139 at *1.

Defendant Robert Wagner has admitted to having intercepted and recorded telephone conversations between Plaintiff Lesa Wagner and the twins, and between Plaintiff Sandra Wagner and the twins. It is undisputed that Defendant Robert Wagner used the information obtained in the dissolution proceeding.

Defendant Robert Wagner asserts that Plaintiff Lesa Wagner has continuously interfered with his visitation with the two older children in her custody, thereby damaging his ability to maintain a relationship with the children. Defendant Robert Wagner additionally asserts that Plaintiff Lesa Wagner has consistently failed to comply with the court's orders regarding her visitation with the twins:

> Lesa has moved herself and the two older children to Alabama.... Lesa "concealed" the children by keeping her moving actions secretive and not informing me of her whereabouts once she had moved. She never communicated to me in any way that she was leaving to go to Alabama. She never provided her address to me once she did move, and left it to me to find her. Her phone is not listed with the local telephone company there either.
>
> Lesa "took" all the children, including the twins, to Alabama without permission. I specifically gave permission for Lesa to leave with the children, providing she would make suitable provisions for me to have visitation with [J.W. and C.W.] Lesa made no such provision, therefore no permission was granted.
>
> Lesa was allowed an extended visitation with the twins until August 16th at 7:00 p.m. at which time she was to return the children to me at my apartment in Minnesota....
>
> On the 16th at 6:30 p.m. Lesa called to say the kids would not be back at 7:00 p.m. ...
>
> On Monday, Lesa called at 9:30 a.m. to say she couldn't get the children on the flight. She also threatened to go to the local sheriff to have him talk to the children and hear her story because she didn't think she should have to send the children back. She did not call on Tues-

day or Wednesday, and there was no answer when I called her.

Given Lesa's dishonesty about the availability of flights and her lack of communication and cooperation regarding keeping her commitments to return the children on the 16th, I decided to drive to Alabama to pick up the children. I have since discovered that, during the time she was to be returning the kids to Minnesota, Lesa took [the twins] to see the elementary school they would go to in Prattville, AL.

(Def.'s Ex. C., Affidavit of Robert Wagner, dated August 26, 1998, ¶ 14 (emphases omitted).)

Defendant Robert Wagner asserts that Plaintiff Lesa Wagner has continuously attempted to manipulate the twins' emotions and alienate the children from their father. Robert Wagner alleges that Lesa Wagner "continually is 'coaching' the twins to tell others that they want to live with her." (Def.'s Ex. E., Affidavit of Robert Wagner, dated June 26, 1998, ¶ 33.)

Defendant Robert Wagner further asserts that Lesa Wagner participates in conversations between the twins and their sister, Plaintiff Sandra Wagner, and also uses those opportunities to manipulate the twins. Robert Wagner asserts that in a telephone conversation between Plaintiff Sandra Wagner and the twins, Plaintiff Lesa Wagner could be heard in the background coaching Sandra Wagner:

Then both boys were coached to call 911 if I ever left them alone, even for a few minutes. When the boys asked what would happen? They were told the police would pick them up and they could come live at the house. They were also told to tell the neighbor mother that they want to go live at the house. Furthermore, they were told to tell everybody they meet they want to go live at the (Lesa's) house. At the end of the conversation they were told to "keep this very secret and be sure not to tell dad" . . . .

(Def.'s Ex. E., Affidavit of Robert Wagner, dated June 26, 1998, ¶ 34.)

## Discussion

### A. Standard of Review

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir.1996). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank*, 92 F.3d at 747. However, as the Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Fed.R.Civ.P. 1, *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must then demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir.1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Krenik*, 47 F.3d at 957.

### B. Violation of Wiretapping Statutes

The relevant provisions of the federal wiretapping statute provide as follows:

1. Except as otherwise specifically provided in this chapter any person who—

(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to

intercept, any wire, oral, or electronic communication;

(b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when—

(i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; . . .

. . . .

(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of the subsection;

(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; . . .

. . . .

shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S.C.A. § 2511 (1999).

Recovery of civil damages for violation of the federal wiretapping statute is authorized as follows:

Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate.

18 U.S.C.A. § 2520(a) (1999).

Minnesota's wiretapping statutes are nearly identical to the federal wiretapping statutes. *Copeland v. Hubbard Broadcasting, Inc.*, 526 N.W.2d 402, 406 (Minn. Ct.App.1995). Minn.Stat. § 626A.02 similarly provides that any person who intentionally intercepts and discloses any oral communication is subject to civil suit.

## C. Vicarious Consent Doctrine

Conversations intercepted with the consent of either of the parties are explicitly exempted from Title III liability. *Pollock v. Pollock*, 154 F.3d 601, 606 (6th Cir.1998), 18 U.S.C. § 2511(2)(d) provides as follows:

It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C.A. § 2511(2)(d) (1999).

Minn.Stat. § 626A.02, subd. 2(d) contains the same consent exemption.

The Court is now confronted with an issue upon which the Eighth Circuit has not spoken, specifically, whether the exemption permits a custodial parent to "vicariously consent" to the recording of the minor child's telephone conversations.[1]

1. The Eighth Circuit has previously decided two cases involving facts similar to the present matter. In *Platt v. Platt*, 951 F.2d 159 (8th Cir.1989), a husband sued his estranged wife under Title III for recording his telephone calls with their minor daughter, allegedly to gain advantage in the parties' dissolution proceedings. Similarly, in *Rice v. Rice*, 951 F.2d 942 (8th Cir.1991), the plaintiff sued his former wife under Title III for recording telephone calls between the plaintiff and the parties' children. However, at the time both cases were decided, the federal courts were grappling with the issue of whether Title III applied to interspousal communications, and whether the statute necessarily required that the federal courts become involved in purely domestic conflicts. Consequently, the cases were decided on that basis, and the Eighth Circuit did not reach the issue of the vicarious consent doctrine in *Platt* or *Rice*.

Indeed, the defendant mother in *Platt* had asserted that, as the legal guardian of the

Although the issue has not been explicitly addressed by the Eighth Circuit, federal courts in other circuits have examined the issue of the vicarious consent doctrine. *See, e.g., Pollock v. Pollock*, 154 F.3d 601 (6th Cir.1998); *Thompson v. Dulaney*, 838 F.Supp. 1535 (D.Utah 1993).

Most recently, the Sixth Circuit analyzed the vicarious exception doctrine in *Pollock*. *Pollock*, 154 F.3d at 607–10. The *Pollock* case, in which a non-custodial parent sued the custodial parent for recording telephone conversations between the non-custodial parent and their 14 year-old child, involved facts substantially similar to those in the present matter. As the Sixth Circuit noted, the basis of the case "occurred in the context of a bitter and protracted child custody dispute," and the custodial parent maintained that the non-custodial father was subjecting the child to emotional abuse and manipulation by pressuring the child regarding custodial matters. *Pollock*, 154 F.3d at 603–04.

After an in-depth analysis of the issue, including a thorough examination of the relevant case law from other jurisdictions, the Sixth Circuit adopted the vicarious consent doctrine and held as follows:

> [A]s long as the guardian has a good faith, objectively reasonable basis for believing that it is necessary and in the best interest of the child to consent on behalf of his or her minor child to the taping of telephone conversations, the

guardian may vicariously consent on behalf of the child to the recording.

*Pollock*, 154 F.3d at 610.

The court held that the issue of material fact as to the defendant's motivation in taping the telephone conversations precluded summary judgment. *Pollock*, 154 F.3d at 612.

In addition, another district court in the Eighth Circuit addressed the vicarious consent doctrine in *Campbell v. Price*, 2 F.Supp.2d 1186 (E.D.Ark.1998). In analyzing the issue, the court recognized that the "Eighth Circuit has not addressed whether parents may vicariously consent to the recording of their minor children's conversations" and noted that the court had "uncovered no cases rejecting a vicarious consent argument, and, furthermore, finds persuasive the cases allowing vicarious consent." *Campbell*, 2 F.Supp.2d at 1189. The court thus adopted the vicarious consent doctrine, holding that the custodial parent's "intercepting the telephone conversations must have been founded upon a good faith belief that, to advance the child's best interests, it was necessary to consent on behalf of his minor child." *Campbell*, 2 F.Supp.2d at 1191. In reaching its decision, the court noted that it "merely applied what it concludes to be the majority law on the subject...." *Campbell*, 2 F.Supp.2d at 1192.

Indeed, the only case in which the court explicitly declined to adopt the vicarious consent doctrine in connection with Title III was that of *Williams v. Williams* ("*Williams I*"), 229 Mich.App. 318, 581 N.W.2d 777 (1998).[2] In rejecting the doc-

---

minor children she "stood in the place of the minor child and consented to the recording." *Platt*, 951 F.2d at 160. Nevertheless, as explained by the Eighth Circuit, the district court had framed the issue as the extent to which Title III applied to interspousal wiretaps and, in dismissing the case, had declined to address the parties' arguments concerning the application of Title III's consent exemption. *Platt*, 951 F.2d at 160. On appeal, the Eighth Circuit held that, in light of the then-recently decided case of *Kempf v. Kempf*, 868 F.2d 970 (8th Cir.1989) (holding that Title III applies to domestic situations of interspousal wiretapping), the district court had relied on a nonexistent interspousal immunity. *Platt*, 951 F.2d at 160. The Eighth Circuit thus reversed the district court's dismissal and re-

manded *Platt* for further proceedings, including consideration of the consent issue. *Platt*, 951 F.2d at 161.

**2.** The case of *West Virginia Dept. of Health and Human Resources v. David L.*, 192 W.Va. 663, 453 S.E.2d 646 (1994), in which the Supreme Court of Appeals of West Virginia discussed and declined to apply the vicarious consent doctrine, is distinguishable from the facts of this case and the aforementioned cases which applied the doctrine. In the West Virginia case, a non-custodial father enlisted his mother to place a tape recorder in the home of his former wife, who had custody of their children, for the purpose of recording conversations between the mother and the children. *David L.*, 453 S.E.2d at 648. The

trine, the Michigan court recognized that it was deviating from the majority. *Williams*, 581 N.W.2d at 780–81. The Sixth Circuit, in *Pollock*, observed of the *Williams* court that, "in declining to adopt the doctrine of vicarious consent, it was departing from the path chosen by all of the other courts that have addressed the issue." *Pollock*, 154 F.3d at 609.

In fact, the Michigan Supreme Court later remanded the *Williams* case back to the Michigan Court of Appeals for reconsideration in light of *Pollock*. *Williams v. Williams* ("*Williams II*"), 593 N.W.2d 559 (Mich.1999). On remand, the Michigan Court of Appeals reversed its earlier ruling regarding the vicarious liability exception to Title III liability. The court recognized that, "because the Sixth Circuit Court of Appeals has now spoken on the issue and no conflict among the federal courts exists, we are bound to follow the *Pollock* holding on the federal question in the case."[3] *Williams v. Williams* ("*Williams III*"), —— N.W.2d ——, 1999 WL 692342 (Mich.App. Sept.3, 1999). Accordingly, the only case which had explicitly rejected the vicarious consent exception was subsequently reversed, and its decision was brought into conformity with all other federal decisions that have addressed the issue.

Finally, therefore, as the Court has uncovered no cases explicitly rejecting the vicarious consent doctrine, as there appears to be no conflict among the federal courts, and as the Court finds persuasive the cases adopting the vicarious consent doctrine, the Court determines that the vicarious consent doctrine should apply in the present matter.

## Conclusion

This Court adopts the vicarious consent doctrine, which holds that, as long as the guardian has a good faith, objectively reasonable belief that the interception of telephone conversations is necessary for the best interests of the children, the guardian may vicariously consent to the interception on behalf of the children. As there is an issue of fact in the present matter regarding Defendant Robert Wagner's motivations in intercepting and recording telephone conversations between the Plaintiffs and the two minor children in his custody, the Plaintiff's Motion for Summary Judgment must be denied.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. The Plaintiffs' Motion for Summary Judgment (Doc. Nos.9, 16) is **DENIED.**

non-custodial father argued that he had parental authority to give the children's consent. *David L.*, 453 S.E.2d at 653. The court acknowledged the holding of *Thompson v. Dulaney, supra*, which had adopted the vicarious consent doctrine, but held that "under the specific facts of the case before us, we hold a parent has no right on behalf of his or her children to give consent...." *David L.*, 453 S.E.2d at 654. The court explicitly stated, "We do not disagree with the reasoning in *Thompson;* however, we determine the facts of the present case are different from the facts in *Thompson* in two significant respects." *David L.*, 453 S.E.2d at 654. The court noted in distinction that, first, the parent who procured the interception was not the custodial parent; and second, the recordings did not occur in the home of the parent who procured the interception, but rather the tape recorder had been surreptitiously placed in the other parent's home. *David L.*, 453 S.E.2d at 654. The court thus did not explicitly reject the vicarious consent doctrine, but rather declined to apply the doctrine to the circumstances of that case.

**3.** The Michigan court reaffirmed its ruling regarding the Michigan eavesdropping statute, however, noting that "this Court is not compelled to follow federal precedent or guidelines in interpreting the Michigan eavesdropping statute." *Williams III*, —— N.W.2d at ——, 1999 WL 692342.