THOMAS STEWART KROH, Plaintiff v. TERESA LEDFORD KROH, Defendant

No. COA01-1027

(Filed 20 August 2002)

### 1. Eavesdropping— Electronic Surveillance Act—illegal recording of in-home conversations and actions

The trial court erred in an action arising out of defendant wife's illegal recording of plaintiff husband's in-home conversations and actions by granting plaintiff husband partial summary judgment on his Electronic Surveillance Act claim, because: (1) defendant's videotaping of her husband would not violate the Electronic Surveillance Act unless such videotaping also included an audio recording, and the record fails to show any evidence or allegation of plaintiff establishing that the subject videotape included sound recordings, N.C.G.S. § 15A-286(14); and (2) although defendant placed voice-activated recorders throughout the family residence, the Court of Appeals adopts the vicarious consent doctrine permitting a custodial parent to vicariously consent to the recording of a minor child's conversations, and defendant presented some evidence showing that she undertook the taping of her husband to protect her children.

### 2. Evidence— hearsay—veterinary reports—bestiality—authentication

The trial court did not err by excluding the veterinary reports proffered by defendant wife at trial to support defendant's claims of alleged bestiality against her husband based on hearsay and improper authentication, because: (1) N.C.G.S. § 8C-1, Rule 901(b)(1) provides that a witness with knowledge of a matter may testify that a matter is what it is claimed to be, and there is no evidence that either veterinarian who made the notes in the reports was unavailable as a witness as defined in N.C.G.S. § 8C-1, Rule 804(a); (2) the proffered veterinary reports contained the notes of the veterinarians and did not contain statements by defendant concerning her state of mind except to the extent that she read them and interpreted them, N.C.G.S. § 8C-1, Rule 803(3); (3) defendant was required to produce the original reports as required by N.C.G.S. § 8C-1, Rule 1002 and properly authenticate them under N.C.G.S. § 8C-1, Rule 901 since she was offering these reports into evidence to prove their contents; and (4) the reports were in fact considered by the trial court and the trial court found

there was nothing in the reports that would substantial defendant's claim that plaintiff had sex with the family dog, that the dog had otherwise been tampered with, or that whoever allegedly did so might also molest children.

**3. Libel and Slander— slander per se—bestiality—child molestation**

The trial court did not err by finding defendant wife liable for slander per se for her statements to various individuals that her husband was having sex with the family dog and molesting her children, because: (1) false accusations of crime or offenses involving moral turpitude are actionable as slander per se; (2) although N.C.G.S. § 7B-301 imposes an affirmative duty upon anyone who has cause to suspect child abuse or neglect to report such conduct to the county Department of Social Services (DSS) and N.C.G.S. § 7B-309 provides immunity from civil liability for a person who reports such conduct and acts in good faith, statements to anyone other than persons with DSS concerning allegations that plaintiff molested defendant's minor sons would not be protected; (3) defendant acted with actual malice, thus negating any qualified immunity she otherwise would have enjoyed under N.C.G.S. § 7B-309 for her statements to DSS, when she made these statements with knowledge that they were false or with reckless disregard for their truth or a high degree of awareness of the probability of their falsity; and (4) plaintiff proved by clear and convincing evidence that defendant's statements were made with malice as defined in N.C.G.S. § 1D-5.

Appeal by defendant from order entered 7 January 2000 and judgment entered 28 December 2000 by Judge Howard R. Greeson, Jr. in Superior Court, Guilford County. Heard in the Court of Appeals 15 May 2002.

*Moss, Mason & Hill, by Matthew L. Mason and William L. Hill, for the plaintiff-appellee.*

*Smith, James, Rowlett & Cohen, LLP, by Seth R. Cohen, for the defendant-appellant.*

WYNN, Judge.

This appeal by defendant wife arises from a civil judgment against her stemming from her illegal wiretapping of her plaintiff husband's in-home conversations and actions. She presents the following

KROH v. KROH

[152 N.C. App. 347 (2002)]

issues on appeal: (I) Does the Electronic Surveillance Act apply to non-consensual recordings by one spouse of the other in their family home? If so, were there issues of fact in this case precluding summary judgment on the Electronic Surveillance Act claims? (II) Did the trial court properly exclude veterinary reports that the wife contends support her allegations of bestiality against the husband? (III) Did the trial court err in finding the wife liable for slander *per se* for her statements to various individuals concerning her suspicions that her husband was having sex with the family dog and molesting her children? We answer the first issue, yes, but reverse because there were issues of fact precluding summary judgment on this issue. However, we affirm the exclusion of the veterinary reports for failure of the wife to authenticate the exhibits, and affirm in part, and vacate and remand in part, the trial court's bench judgment on the husband's slander *per se* claims.

Thomas and Teresa Kroh married in 1992 and separated in early December 1998. During the marriage and at the time of the alleged acts giving rise to this action in November and December 1998, the couple lived together along with Teresa Kroh's thirteen and ten year old sons from a prior marriage. At all relevant times, Thomas Kroh worked as a police officer with the Greensboro Police Department.

On numerous occasions throughout the marriage, Teresa Kroh accused Thomas Kroh of having affairs with other women; these accusations became more frequent during the spring and early fall of 1998. In early November 1998, unbeknownst to her husband, Teresa Kroh placed tape recorders in the family home, and later placed a video camera in the home. As a result, she obtained audio and video recordings from these devices without her husband's knowledge. In a conversation before Thanksgiving in November 1998, Teresa Kroh accused her husband of having sexual relations with the family dog, and claimed to have captured the event on tape. Her husband subsequently informed her that he wished to end the marriage.

Around the first of December 1998, Teresa Kroh reported to the State Bureau of Investigation that her husband had engaged in sexual conduct with the family dog, and had molested her two minor sons. The next day, she telephoned her husband's sister, Nancy Dowell, and told Ms. Dowell that Thomas Kroh had molested their two minor sons and had been having sex with the family dog. Around the same time, Teresa Kroh telephoned her husband's long-time friend, Richard Herrin, and stated to him that her husband had engaged in sex with

the family dog. When Herrin and her husband's co-worker, Steve Hollers, went to retrieve some of her husband's belongings from the family home, Teresa Kroh stated to Herrin, in the presence of Hollers, not to allow her husband near Herrin's dogs.

In March 1999,[1] Thomas Kroh brought this action against Teresa Kroh alleging causes of action against her for (1) abuse of process, (2) defamation, (3) violation of North Carolina's Electronic Surveillance Act, Art. 16 of Chapter 15A of the General Statutes (N.C. Gen. Stat. §§ 15A-286 *et seq.* (2001)), and (4) intentional infliction of emotional distress. He later amended his complaint to add a cause of action for negligent infliction of emotional distress. Teresa Kroh answered, asserting various affirmative defenses, including the truth of her allegations.

On 7 January 2000, Superior Court Judge Howard R. Greeson, Jr., granted summary judgment in favor of Thomas Kroh on his claims under the Electronic Surveillance Act and awarded $1,000.00 in compensatory damages under G.S. § 15A-296. Following a bench trial on the remaining claims, Judge Greeson found Teresa Kroh liable for slander *per se,* and awarded Thomas Kroh $20,000 in compensatory damages, $60,000 in punitive damages for slander *per se,* and $5,000 in punitive damages for violation of the Electronic Surveillance Act. This appeal followed.

(I)

[1] On appeal, we first address the issues of whether the Electronic Surveillance Act applies to non-consensual recordings by one spouse of the other in their family home; and if so, were there issues of fact in this case precluding summary judgment on the Electronic Surveillance Act claims. We answer: Yes, the Electronic Surveillance Act prohibits non-consensual recordings by one spouse of the other even within their family home; and, yes, there are issues of fact that preclude summary judgment in this case.[2]

---

1. Also in March 1999, Teresa Kroh filed an action for divorce, post-separation support, alimony, equitable distribution, interim allocation, and a request for a temporary restraining order and a preliminary injunction. She alleged therein that Thomas Kroh had "engaged in deviant sexual activities" and had endangered the lives of her and her children by engaging in illicit sexual acts without taking reasonable precautions.

2. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and that a party is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56 (2001).

North Carolina's Electronic Surveillance Act creates a Class H felony of conduct whereby a person, without the consent of at least one party to the communication, "[w]illfully intercepts, [or] endeavors to intercept, . . . any . . . oral . . . communication." G.S. § 15A-287(a)(1). An "oral communication" includes all oral communications "uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such [an] expectation[.]" G.S. § 15A-286(17). The Act defines "intercept" to mean "the aural or other acquisition of the contents of any . . . oral . . . communication through the use of any electronic, mechanical, or other device." G.S. § 15A-586(13). Thus, in general, recording or endeavoring to record a person's private conversations without the consent of a party to the conversation is a Class H felony under the Electronic Surveillance Act. *See* G.S. § 15A-286.

Additionally, G.S. § 15A-296 creates a *civil* cause of action for persons whose communications are intercepted, disclosed or used in violation of the Electronic Surveillance Act against the person(s) violating the Act, and provides for the recovery of damages, attorneys' fees and litigation costs associated therewith. *See* G.S. § 15A-296(a). This statute, by its plain language, requires the *actual* interception, disclosure, or use of a communication as a prerequisite to maintaining a civil action and obtaining civil damages, in contrast to G.S. § 15A-286, which criminalizes a mere *endeavor* to intercept such a communication.

While our courts have not previously construed the Electronic Surveillance Act, we note the many similarities between the Electronic Surveillance Act and the federal wiretapping statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.A. § 2510 *et seq.* (2000) (the "Omnibus Act"). The Omnibus Act creates a civil cause of action for intercepting, disclosing, or intentionally using an oral communication in violation of the Omnibus Act. *See* 18 U.S.C.A. § 2520 (2000). Like G.S. § 15A-287, the Omnibus Act prohibits persons from intentionally intercepting, or endeavoring to intercept, any oral communication. *See* 18 U.S.C.A. § 2511(1)(a).

In this case, Teresa Kroh admits that she videotaped her husband's activities. However, under the plain language of G.S. § 15A-287(1)(a) (as well as the federal Omnibus Act), only oral communications are covered by the Act. Thus, Teresa Kroh's videotaping of her husband would not violate the Electronic Surveillance Act unless such videotaping also included an audio recording. *See* G.S.

§ 15A-286(14) (definition of "intercept" includes the aural acquisition of oral communications); *see also U.S. v. Torres*, 751 F.2d 875, 880 (7th Cir. 1984) (video "surveillance (with no soundtrack) just is not within the statute's domain"), *cert. denied*, 470 U.S. 1087, 85 L. Ed. 2d 150 (1985); *U.S. v. Andonian*, 735 F. Supp. 1469, 1472 (C.D.Cal. 1990) ("video surveillance is not governed by Title III" of the Omnibus Act), *affirmed*, 29 F.3d 634 (9th Cir. 1994), *cert. denied*, 513 U.S. 1128, 130 L. Ed. 2d 883 (1995). Because the record fails to show any evidence or allegation by Thomas Kroh establishing that the subject videotaping included sound recordings, we summarily reverse the trial court's order granting him partial summary judgment on his claim of illegal videotaping under the Electronic Surveillance Act.

Teresa Kroh further admits that she placed voice-activated recorders throughout the family residence, and recorded Thomas Kroh without his consent at times during November and December 1998. Under the plain language of G.S. § 15A-287(1)(a), her tape-recordings of Thomas Kroh's conversations constituted willfully intercepting (or endeavoring to intercept) an oral communication. However, intercepting (or endeavoring to intercept) a communication does not violate G.S. § 15A-287 where at least one party to the "communication" consents to the interception thereof. *See* G.S. § 15A-287; *see also* 18 U.S.C.A. § 2522(2)(d).

As to the defense of consent, Teresa Kroh first contends that *her own* consent to the interception of Thomas Kroh's communications precludes his action under the Electronic Surveillance Act. However, this contention is wholly without merit as there is no evidence that Teresa Kroh was a "party" to any of the communications that were intercepted or that she endeavored to intercept. *See* G.S. § 15A-287(a).

Teresa Kroh also contends that she vicariously consented, on behalf of her minor children, to the interception of any oral communications between Thomas Kroh and her sons. While our courts have not addressed this issue, federal courts construing the Omnibus Act have considered and adopted the "vicarious consent doctrine." *See Wagner v. Wagner*, 64 F. Supp. 2d 895 (D. Minn. 1999); *see also Pollock v. Pollock*, 154 F.3d 601 (6th Cir. 1998); *Campbell v. Price*, 2 F. Supp. 2d 1186 (E.D. Ark. 1998); *Thompson v. Dulaney*, 838 F. Supp. 1535 (D. Utah 1993). As we find the reasoning of these cases persuasive, we adopt the vicarious consent doctrine with respect to our Electronic Surveillance Act, thereby permitting a custodial parent to vicariously

consent to the recording of a minor child's conversations, as long as the parent:

> has a good faith, objectively reasonable belief that the interception of [the] conversations is necessary for the best interests of the child[.]

*Wagner*, 64 F. Supp. 2d at 901; *see Pollock*, 154 F.3d at 610.

In this case, Teresa Kroh presented some evidence showing that she undertook the taping of her husband to protect her children. While this evidence is disputed, it nonetheless presents an issue of fact concerning her motivations in recording (or endeavoring to record) Thomas Kroh's conversations with her minor sons. We therefore conclude that the trial court erred in granting partial summary judgment to Thomas Kroh on his Electronic Surveillance Act claim. Accordingly, we reverse the order of summary judgment on this claim.

## (II)

[2] We next consider the question of whether the trial court properly excluded veterinary reports that Teresa Kroh contends support her claims of bestiality against her husband. We answer: Yes, because she failed to properly authenticate the proffered reports.

N.C. Gen. Stat. § 8C-1, Rule 901 (2001) requires that an item of evidence be properly authenticated or identified prior to its admissibility. N.C. Gen. Stat. § 8C-1, Rule 1002 (2001) requires that, "[t]o prove the content of a writing, . . . the original writing . . . is required, except as otherwise provided in these rules or by statute." N.C. Gen. Stat. § 8C-1, Rule 1003 (2001) provides that a duplicate is admissible to the same extent as an original, unless there is a genuine question raised regarding the authenticity of the original. In the instant case, Thomas Kroh raised an issue at trial based on a lack of authentication of the records, thus requiring Teresa Kroh to show the authenticity of the alleged duplicate copies of the reports.

Moreover, N.C. Gen. Stat. § 8C-1, Rule 901(b)(1) (2001) provides that a witness with knowledge of a matter may testify "that a matter is what it is claimed to be." Nonetheless, every writing that is sought to be admitted, such as the veterinary reports in the instant case, (a) must be properly authenticated under Rule 901, (b) must satisfy the requirements of the "best evidence rule," Rule 1002, or an exception thereto, Rule 1003 *et seq.*, and (c) if offered for use as hearsay, the

writing must conform to at least one of the hearsay rule exceptions established in N.C. Gen. Stat. § 8C-1, Rules 803 and 804 (2001).[3] In this case, there was no evidence that either veterinarian, Dr. David Scotton or Dr. Mark Jackson, was "unavailable" as a witness as defined in Rule 804(a); thus, the hearsay reports Teresa Kroh sought to introduce must have fallen within one of the Rule 803 hearsay exceptions in order to have been admissible.

Nonetheless, Teresa Kroh argues that these reports were improperly excluded under the hearsay rule as they were offered, in part, to establish her *state of mind* at the time she made her allegations against Thomas Kroh, and thus were not technically hearsay under N.C. Gen. Stat. § 8C-1, Rule 801(c) (2001), as they were not offered to prove the truth of the matter asserted therein. She also argues that, even if the reports constituted hearsay, they were admissible under N.C. Gen. Stat. § 8C-1, Rule 803(3). However, the proffered veterinary reports do not contain statements by *Teresa Kroh* concerning *her* state of mind; Rule 803(3) only permits the introduction of statements of the *declarant's* then-existing state of mind. Since the proffered reports contained the notes of veterinarians, they were not relevant to *Teresa Kroh's* state of mind except to the extent that she read them and interpreted them. As she was offering these reports into evidence to prove their *contents* (and how she interpreted those contents, regardless of their actual truth or falsity), Teresa Kroh was required to produce the original reports (under Rule 1002) and properly authenticate them (under Rule 901). Since she failed to do so, these reports were properly excluded by the trial court.

Additionally, even though the reports were properly excluded as evidence, the trial court, in rendering its judgment following the bench trial, nonetheless stated that it had actually considered the alleged oral statements made by the veterinarians to Teresa Kroh, not as true, substantive evidence, but only to possibly explain and justify her actions. The trial court found that there was nothing in the reports, "admitted or not admitted, that would substantiate [Teresa Kroh's] claims" that Thomas Kroh had sex with the family dog, that the dog had been otherwise tampered with, or that whoever allegedly did so might also molest children. Accordingly, while we uphold the

---

3. Rule 803 provides certain exceptions to the hearsay rule irrespective of the hearsay declarant's availability as a witness, including, among others, an exception for a "statement of the declarant's then existing state of mind[.]" *See* N.C. Gen. Stat. § 8C-1, Rule 803(3). Rule 804 lists hearsay exceptions that apply only when the declarant is "unavailable" as a witness. *See* N.C. Gen. Stat. § 8C-1, Rule 804.

exclusion of the reports, we further note that the reports were in fact considered by the trial court for the purpose desired by Teresa Kroh and thus, this assignment of error is wholly without any merit.

## (III)

**[3]** Finally, we address the issue of whether the trial court erred in finding Teresa Kroh liable for slander *per se* for her statements to various individuals concerning her suspicions that her husband was having sex with the family dog and molesting her children. We answer: No, because the trial court's findings are supported by competent evidence and those findings in turn support the conclusions of law.

> Appellate review of findings of fact "made by a trial judge, without a jury, is limited to . . . whether there is competent evidence to support the findings of fact." A trial court's conclusions of law, however, are reviewable *de novo* on appeal.

*Lee Cycle Ctr., Inc. v. Wilson Cycle Ctr., Inc.*, 143 N.C. App. 1, 9, 545 S.E.2d 745, 750 (internal citations omitted), *affirmed*, 354 N.C. 565, 556 S.E.2d 293 (2001).

The record on appeal in this case shows that Teresa Kroh's assignments of error on this issue state merely that the "trial court erred in its findings of fact and conclusions of law" and cite the trial court's entire judgment entered 28 December 2000, without directing this court's attention to any specific findings or conclusions made by the trial court. "Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). Therefore, we need only determine whether the trial court's findings of fact support its conclusions of law supporting liability for slander *per se*. *See Harris v. Walden*, 314 N.C. 284, 333 S.E.2d 254 (1985).

"False accusations of crime or offenses involving moral turpitude are actionable as slander *per se*." *Dobson v. Harris*, 352 N.C. 77, 79, 530 S.E.2d 829, 832 (2000). However, N.C. Gen. Stat. § 7B-301 (2001) imposes an affirmative duty upon anyone "who has cause to suspect" child abuse or neglect to report such conduct to the county Department of Social Services. Furthermore, N.C. Gen. Stat. § 7B-309 (2001) provides immunity from civil liability to those who report such conduct in accordance with G.S. § 7B-301, "provided that the person was acting in good faith." The reporter's "good faith" is to be pre-

sumed "[i]n any proceeding involving liability[.]" *Id.* In other words, these statutes:

> relieve[] the defendant of the burden of going forward with evidence of her good faith and impose[] upon the plaintiff the burden to go forward with evidence of the defendant's bad faith or malice.

*Dobson,* 352 N.C. at 83, 530 S.E.2d at 835.

In this case, not only did Teresa Kroh allege that Thomas Kroh had molested her minor children, she also asserted that he had sex with the family dog. Assuredly, any such statements regarding the family dog would not be privileged under the plain language of G.S. § 7B-301 which concerns the abuse or neglect of children. Therefore, Teresa Kroh's statements to Nancy Dowell, Richard Herrin, and additional statements in the presence of Steve Hollers concerning acts between Thomas Kroh and the family dog which the trial court found to constitute slander *per se, see Dobson,* were not protected by any qualified privilege under G.S. § 7B-309. Furthermore, statements to anyone other than persons with the county Department of Social Services concerning allegations that Thomas Kroh molested her minor sons would not be protected under G.S. § 7B-309's provision of qualified immunity since that statute concerns reports to the county Department of Social Services.

Thus, the remaining question is whether the trial court properly found that Teresa Kroh's statements to the Department of Social Services were made with actual malice, thereby negating any defense of privilege under G.S. § 7B-309. *See* N.C. Gen. Stat. § 1D-5 (2001) (defining malice as "a sense of personal ill will toward the claimant that activated or incited the defendant to perform the act or undertake the conduct that resulted in harm to the claimant"); *see also Dobson,* 352 N.C. at 86, 530 S.E.2d at 837 (to overcome G.S. § 7B-309's good-faith presumption, plaintiff must show defendant acted with actual malice). We conclude that the record on appeal supports the trial court's determination that Teresa Kroh acted with actual malice, thus negating any qualified immunity she otherwise would have enjoyed under G.S. § 7B-309 for her statements to the Department of Social Services.

The trial court found as fact in its 28 December 2000 judgment that the audiotapes offered by Teresa Kroh "contained no evidence from which a reasonable person could conclude that sexual miscon-

duct had occurred." Both of Teresa Kroh's minor sons testified that Thomas Kroh had not molested them in any way; both sons also testified that they had informed Teresa Kroh, when she inquired, that Thomas Kroh had not molested them in any way. The trial court found as fact that Thomas Kroh had not molested either of Teresa Kroh's minor sons, and that Teresa Kroh knew those statements were false when she made them. The trial court found that Teresa Kroh made these statements "maliciously and with the intent to injure [p]laintiff." Furthermore, the trial court conspicuously failed to find that Teresa Kroh's testimony was credible, and found instead that Teresa Kroh's conduct had been "cruel, wicked and with evil intent." As Teresa Kroh did not except to these findings of fact, they are deemed binding on appeal. *See Koufman.*

The trial court thus concluded that Teresa Kroh's statements "were made with the knowledge that they were false . . . [or] with [] reckless disregard for the[ir] truth or a high degree of awareness of the probability of [their] falsity." Additionally, the trial court concluded that Thomas Kroh had proven by clear and convincing evidence that Teresa Kroh's statements were made with malice as defined in G.S. § 1D-5.

Upon a careful review of the record and the evidence before the trial court, we conclude that the trial court's factual findings support its conclusion that Teresa Kroh's statements to the Department of Social Services were made with the knowledge that they were false or with reckless disregard as to their truth or falsity. The trial court's findings that Teresa Kroh's statements were made "maliciously and with the intent to injure" Thomas Kroh, and that Teresa Kroh's conduct in the matter had been "cruel, wicked and [done] with evil intent," support the trial court's conclusion that Teresa Kroh's statements were made with actual "malice" as defined in G.S. § 1D-5, thus depriving her of any alleged qualified immunity under G.S. § 7B-309. Accordingly, we affirm the trial court's conclusion that Teresa Kroh was liable to Thomas Kroh for slander *per se* in connection with her statements made to the Department of Social Services, the State Bureau of Investigation, Nancy Dowell, Richard Herrin and Steve Hollers.

In summary, we reverse the trial court's 7 January 2000 order granting Thomas Kroh partial summary judgment on his Electronic Surveillance Act claim, including the award of compensatory damages and attorneys' fees therein as well as that portion of the trial court's 28 December 2000 judgment awarding Thomas Kroh $5,000.00

in punitive damages pursuant to G.S. § 15A-286 for violation of the Electronic Surveillance Act. However, we affirm the trial court's exclusion of the veterinary reports proffered by Teresa Kroh at trial, and affirm the trial court's findings of fact and conclusions of law in its 28 December 2000 judgment, including its conclusion that Teresa Kroh acted with actual malice and therefore was not entitled to the "good faith" presumption under G.S. § 7B-309. In addition, we affirm the trial court's award of compensatory and punitive damages to Thomas Kroh on his slander *per se* claims.

Reversed and remanded in part; affirmed in part.

Judges HUNTER and THOMAS concur.