732 S.E.2d 861

The STATE, Respondent,

v.

Samuel WHITNER, Appellant.

No. 27142.

Supreme Court of South Carolina.

Heard Oct. 18, 2011.

Decided July 11, 2012.

Chief Appellate Defender Robert M. Dudek, of Columbia, and Christopher D. Scalzo, of Greenville, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General William M.

Blitch, Jr., all of Columbia, and W. Walter Wilkins, III, of Greenville, for Respondent.

Justice KITTREDGE.

Appellant Samuel Whitner was convicted and sentenced for the offense of criminal sexual conduct (CSC) with a minor in the first degree. The victim of the sexual abuse was Appellant's then five-or six-year-old daughter. Appellant assigns error to two evidentiary rulings. The first ruling was the denial of Appellant's motion to suppress a tape recording of his telephone conversation with the victim wherein he admitted the abuse. The second ruling was the denial of Appellant's motion to exclude evidence in connection with a forensic interview of the minor victim. We find no error in the admission of the challenged evidence and affirm.

## I.

Appellant is the victim's biological father. According to the victim's testimony, when she was five or six years old, Appellant exposed his penis to victim and forced her to perform oral sex on him twice.

In 2007, when the victim was eleven years old, the victim disclosed the abuse to her mother (Mother). According to Mother, she encouraged the victim to confront Appellant. The victim telephoned Appellant to confront him, and he denied the incident. Mother subsequently informed her husband (Stepfather) about the abuse. The couple decided to record telephone calls between Appellant and the victim. Several days later, Mother consented to Stepfather recording a telephone conversation between the victim and Appellant without the victim's knowledge or consent. During the thirty-one-minute conversation, Appellant admitted the sexual abuse and stated that the incident was a mistake he deeply regretted.

Mother supplied the recording to law enforcement, and Appellant was arrested and charged with CSC with a minor in the first degree. As part of the investigation, a forensic interview of the victim was conducted.

Appellant filed a motion to suppress the recorded telephone conversation, claiming the recording, intercepted without the

prior consent of either party, violated the South Carolina Homeland Security Act (Wiretap Act), S.C.Code Ann. § 17–30–10 *et. seq.* (Supp. 2010), which generally prohibits the interception of communications. A circuit court judge granted the motion to suppress.[1]

The State filed an interlocutory appeal with the court of appeals and sought to vacate the trial court's suppression order pursuant to the Wiretap Act. The court of appeals correctly granted the State's motion to vacate and found that the trial court lacked subject matter jurisdiction because the Wiretap Act requires that a motion to suppress be made before a panel of judges of the court of appeals.

Thereafter, the court of appeals held a suppression hearing, including the taking of testimony and oral arguments. Stepfather testified that he believed recording the conversation would aid the parents in deciding the best course of action for the victim, including determining whether she needed sexual abuse counseling. Likewise, Mother testified she believed recording the conversations would be useful because she did not know what the conversations between the victim and Appellant entailed, the victim was crying often, and she needed to determine if it was appropriate to permit Appellant to have contact with the victim.

On the legal issue of consent, the court of appeals held that the Legislature, in enacting the Wiretap Act, intended to adopt the vicarious consent doctrine. Mother could, therefore, lawfully vicariously consent to the recording on behalf of the victim. On the factual matter, the court of appeals found that Mother had a good faith and objectively reasonable basis for believing the recording was necessary and in the victim's best interest, and it therefore denied Appellant's motion to suppress. The court of appeals sent the case back to the trial court.

At trial, the recording of the phone conversation between Appellant and the victim was admitted, over Appellant's continuing objection. The State also introduced a videotape of the victim's forensic interview. The contents of the interview were similar to the underlying allegations the victim first

---

1. The judge who granted the motion to suppress was not the judge who presided over the trial.

disclosed to Mother and the testimony given by the victim at trial. The videotape was admitted over Appellant's objections of improper bolstering and hearsay. The jury convicted Appellant of CSC with a minor in the first degree, and he was sentenced to prison. This appeal follows.

## II.

■ Appellant claims the Wiretap Act was violated because neither he nor the victim, the parties to the communication, consented to the recording. Conversely, the State claims the Wiretap Act was not violated because the recording fell within the consent provision. Specifically, the State contends the statute allows Mother, as a guardian to the minor victim, to vicariously consent on behalf of the victim to record the telephone conversation between the victim and Appellant.

The South Carolina Wiretap Act is patterned after the Omnibus Crime Control and Safe Streets Act of 1968 (Federal Act). This Court must determine whether the Wiretap Act allows or bars the admission of the recording.

■ Questions of statutory interpretation are questions of law, which are subject to *de novo* review and which we are free to decide without any deference to the court below. *Transp. Ins. Co. & Flagstar Corp. v. S.C. Second Injury Fund,* 389 S.C. 422, 427, 699 S.E.2d 687, 689 (2010); *Catawba Indian Tribe of S.C. v. State,* 372 S.C. 519, 524, 642 S.E.2d 751, 753 (2007).

■ The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the legislature. *Sloan v. Hardee,* 371 S.C. 495, 498, 640 S.E.2d 457, 459 (2007). "All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute." *State v. Sweat,* 386 S.C. 339, 350, 688 S.E.2d 569, 575 (2010). Absent an ambiguity, the court will look to the plain meaning of the words used to determine their effect. *City of Rock Hill v. Harris,* 391 S.C. 149, 155, 705 S.E.2d 53, 55 (2011). "Under general rules of statutory construction, a jurisdiction adopting legislation from another jurisdiction imports with it the judi-

cial gloss interpreting that legislation." *Orr v. Clyburn*, 277 S.C. 536, 540, 290 S.E.2d 804, 806 (1982).

The Wiretap Act is violated when a person intercepts oral communications that are not otherwise exempt from or subject to an exception contained in section 17–30–30. Evidence intercepted in violation of the Wiretap Act must be suppressed. *See* S.C.Code Ann. § 17–30–110. However, when a party to a communication gives consent for the communication to be intercepted, such recording does not violate the law. The full text of the consent provision states:

> It is lawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication *where the person is a party to the communication or where one of the parties to the communication has given prior consent to the interception.*

S.C.Code Ann. § 17–30–30(C) (emphasis added).

Appellant argues that because there is no explicit provision permitting vicarious consent, parental consent on behalf of a minor was not intended to be an exception to the Wiretap Act. We disagree.

Our Wiretap Act parallels the Federal Act passed by Congress in 1968, which similarly permits lawful interception where one party to the communication consents.[2] Because no South Carolina cases have addressed a parent's ability to vicariously consent to the recording of a child's telephone conversations and because the Federal Act is substantively the same as South Carolina's Wiretap Act, we look to the federal courts' interpretations regarding vicarious consent. *See Orr*, 277 S.C. at 540, 290 S.E.2d at 806 ("Under general rules of statutory construction, a jurisdiction adopting legislation from another jurisdiction imports with it the judicial gloss interpreting that legislation.").

---

2. "It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C.A. § 2511 (2006).

■ The leading federal case is *Pollock v. Pollock*, 154 F.3d 601 (6th Cir.1998). In *Pollock*, the Sixth Circuit Court of Appeals held that a mother did not violate the Federal Act when she recorded conversations between her daughter and the daughter's stepmother. The *Pollock* court, adopting the rule first enumerated in *Thompson v. Dulaney*, 838 F.Supp. 1535, 1544 (D.Utah 1993), articulated the doctrine of vicarious consent as follows:

> [A]s long as the guardian has a good faith, objectively reasonable basis for believing that it is necessary and in the best interest of the child to consent on behalf of his or her minor child to the taping of telephone conversations, the guardian may vicariously consent on behalf of the child to the recording.

154 F.3d at 610; *see also Wagner v. Wagner*, 64 F.Supp.2d 895, 896 (D.Minn.1999) (holding a guardian may consent on behalf of a minor to the interception of a communication); *Campbell v. Price*, 2 F.Supp.2d 1186, 1191 (E.D.Ark.1998) (holding a parent's good faith concern for his minor child's best interest may empower the parent to legally intercept the child's conversations); *Thompson v. Dulaney*, 838 F.Supp. 1535, 1544 (D.Utah 1993) (finding the vicarious consent doctrine permissible under the federal wiretap statute because of a parent's duty to act in the best interest of their child).

South Carolina's Wiretap Act, modeled after the Federal Act, was enacted in 2002. As the above federal jurisprudence indicates, when our Legislature enacted the Wiretap Act, it was well aware of the majority rule concerning construction of the Federal Act in allowing for vicarious consent.[3] We are persuaded that the consent provision in the Wiretap Act encompasses vicarious consent. In reaching this conclusion, we join the majority of state courts that have confronted the same question of statutory construction and have followed the

---

**3.** In fact, prior to the adoption of the Wiretap Act, this Court's jurisprudence relied on federal courts' interpretations of the Federal Act in permitting the recording of a telephone conversation where only one party to the conversation consented. *See Mays v. Mays*, 267 S.C. 490, 229 S.E.2d 725 (1976) (holding that one party to a telephone conversation may lawfully record the conversation without the other party's knowledge or consent, and subsequently disclose it); *State v. Andrews*, 324 S.C. 516, 479 S.E.2d 808 (Ct.App.1996) (where one party consents to a recording, it does not violate a person's right to privacy).

federal interpretation. *Accord Silas v. Silas,* 680 So.2d 368 (Ala.Civ.App.1996); *G.J.G. v. L.K.A.,* No. CN93–09835, 2006 WL 2389340 (Del.Fam.Ct.2006); *State v. Spencer,* 737 N.W.2d 124 (Iowa 2007); *Smith v. Smith,* 923 So.2d 732 (La.App. 1 Cir. 9/28/05); *Kroh v. Kroh,* 152 N.C.App. 347, 567 S.E.2d 760 (2002); *State v. Diaz,* 308 N.J.Super. 504, 706 A.2d 264 (N.J.Super.A.D.1998); *People v. Clark,* 19 Misc.3d 6, 855 N.Y.S.2d 809 (N.Y.Sup.Ct.App.Term 2008); *Lawrence v. Lawrence,* No. E2010–00395COA–R3–CV, 2010 WL 4865516 (Tenn. Ct.App.2010); *Alameda v. State,* 235 S.W.3d 218 (Tex.Crim. App.2007).

We further find that Appellant misconstrues the scope of the term "consent." "Consent" is a broad term and is defined as "agreement, approval, or permission as to some act or purpose." Black's Law Dictionary 346 (9th Ed. 2009). The law recognizes different kinds of consent, including express, implied, informed, voluntary, and parental. Parental consent is defined as "[c]onsent given on a minor's behalf by at least one parent, or a legal guardian, or by another person properly authorized to act for the minor, for the minor to engage in or submit to a specific activity." *Id.* We believe the various types of consent recognized in the law support the result we reach today in discerning legislative intent to include vicarious consent.[4]

---

4. Appellant's argument rests in part on various federal courts' rejection of the inter-spousal consent doctrine, which permits one spouse to intercept an electronic communication of the other spouse. *See e.g., Pritchard v. Pritchard,* 732 F.2d 372, 373 (4th Cir.1984) (finding no exception exists under the federal wiretapping statute for instances of willful, unconsented to electronic surveillance between spouses). However, the fact that there is no inter-spousal consent exception does not preclude an adoption of a parent-child vicarious consent exception. Moreover, we view the vicarious consent doctrine as a natural consequence of the unique relationship of parent and child. The doctrine's adoption is far more compelling and justifiable than the inter-spousal consent, as fundamentally different considerations are implicated. The United States Supreme Court and this Court have held it is "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville,* 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *Camburn v. Smith,* 355 S.C. 574, 586 S.E.2d 565 (2003) (citing *Troxel* and stating "[i]t is well-settled that parents have a protected liberty interest in the care, custody, and control of their children"). Furthermore, parents have a duty to protect their child because children "often lack the experience,

In sum, we believe the court of appeals correctly determined that the consent provision in the Wiretap Act includes vicarious consent.

## III.

Appellant contends that even if the Wiretap Act encompasses vicarious consent, that doctrine is not applicable in the instant case. Initially, Appellant asserts that before the vicarious consent doctrine may be applied, a court must find the minor lacked capacity to consent. Additionally, Appellant argues Mother and Stepfather did not have a good faith and objectively reasonable basis for believing it was necessary and in the best interest of the victim to record the telephone conversation.

## A.

■ Appellant argues that the victim was capable of consenting because she was eleven years old at the time of the recording. But a minor's actual ability to consent does not preclude a parent's ability to vicariously consent on her behalf. *See Pollock*, 154 F.3d 601 (applying the vicarious consent doctrine to a fourteen-year-old); *State v. Spencer*, 737 N.W.2d 124 (Iowa 2007) (applying the vicarious consent doctrine to a thirteen-year-old); *Alameda v. State*, 235 S.W.3d 218 (Tex. Crim.App.2007) (applying the vicarious consent doctrine to a thirteen-year-old). Further, we believe it inadvisable to create a bright-line age limit for the application of vicarious consent because "not all children develop emotionally and intellectually on the same timetable." *Pollock*, 154 F.3d at 610. Thus, the ability to invoke the vicarious consent doctrine prior to the age of majority does not turn on an age-mandated bright-line rule, nor does it require a minor's lack of capacity.

## B.

■ Appellant next contends that the court of appeals erred in finding Mother had a good faith and objectively

---

perspective, and judgment to recognize and avoid choices that could be detrimental to them." *Bellotti v. Baird*, 443 U.S. 622, 635, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979).

reasonable basis for intercepting the telephone conversation between the victim and Appellant. Pursuant to the procedure prescribed by the Wiretap Act,[5] the court of appeals acted as the trial court in the motion to suppress hearing. "The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion." *State v. Gaster*, 349 S.C. 545, 557, 564 S.E.2d 87, 93 (2002). "An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *Clark v. Cantrell*, 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000).

The parents' motivation in recording the telephone conversation is a question of fact. Given our standard of review, the issue before us is limited to a determination of whether there was any evidence supporting the court of appeals' finding that the parents had a good faith basis for intercepting and recording the phone conversation.

Mother and Stepfather testified they believed the recordings would assist them in deciding the best course of action and in determining whether the victim needed counseling. Likewise, Mother testified it was necessary to determine if it was in the victim's best interest to have continued visitation with Appellant. We believe the evidence supports the court of appeals' finding that Mother had a good faith and objectively reasonable belief that intercepting the telephone conversation was necessary and in the victim's best interest.[6] Thus, we

---

5. S.C.Code Ann. § 17–30–110 states: "The motion [to suppress] must be made before the reviewing authority and must be decided on an expedited basis." The "reviewing authority" is defined as "a panel of three judges of the South Carolina Court of Appeals designated by the Chief Judge of the South Carolina Court of Appeals." S.C.Code Ann. § 17–30–15(9).

6. Although we recognize the fundamental right of parents to make decisions concerning the care, custody, and control of their children, we also recognize, as does the concurrence, that such right is not without limits. As the concurrence states, "constitutional protection does not confer on parents an unlimited right to control their children." While we agree, in the abstract, with the concurrence's sweeping recognition of parents' fundamental right to make decisions concerning the welfare of their children, we must confront the issue in the context presented and not venture into areas never raised, argued or briefed by any party. Appellant argues only that the Wiretap Act does not provide

conclude the court of appeals did not abuse its discretion in denying the motion to suppress.

## IV.

Appellant also contends the interception of the phone conversation was an unreasonable invasion of privacy under the additional protections afforded by our state's constitution. *See* S.C. Const. art. I, § 10 ("The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures and unreasonable invasions of privacy shall not be violated...."). We disagree. Appellant's argument is dependent upon a rejection of the vicarious consent doctrine. Because the Wiretap Act provides for vicarious consent of a minor child, Appellant's constitutional argument must be rejected.

## V.

Appellant's final issue on appeal addresses the admissibility of the forensic interview videotape, contending it was cumulative repetition of the minor victim's testimony at trial and improper bolstering. We disagree. As with any issue regarding the admissibility of evidence, we review the trial court's ruling for abuse of discretion. *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006).

Generally, a prior consistent statement is not admissible unless the witness is charged with fabrication or improper motive or bias. Rule 801(d)(1)(B), SCRE. However, in CSC cases involving minors, the Legislature has made specific allowances for such hearsay statements of child victims under the proper circumstances. *See* S.C.Code Ann. § 17–23–175

for vicarious consent; we have not been presented with a challenge or discussion of the viability of *Pollock* post-*Troxel*. Assuming that issue were squarely before us, we would adhere to the *Pollock* doctrine in this case. In this criminal case against the Appellant father, we are presented with one parent, Mother, vicariously consenting to recording her child's telephone conversation with the other parent, Appellant. In the context where one parent vicariously consents to record a child's electronic communication with the other parent, we believe the *Pollock* doctrine, by imposing a good faith standard linked to the child's best interest, sets forth a proper and reasonable limitation on a parent's right to make decisions concerning the child.

(Supp.2010) (prescribing the requirements that must be met for a child victim's out-of-court statement to be admitted). Moreover, the South Carolina Rules of Evidence explicitly recognize the authority of the Legislature to enact evidentiary rules. *See* Rule 101, SCRE ("Except as otherwise provided by rule or by statute, these rules govern proceedings in the courts of South Carolina....."). Unless a legislative enactment concerning a matter of evidence violates the constitution, the legislative enactment is valid. *See City of Rock Hill v. Harris,* 391 S.C. 149, 154, 705 S.E.2d 53, 55 (2011) (holding that the General Assembly may enact any law not expressly, or by clear implication, prohibited by the state or federal constitutions).

Section 17–23–175 is a valid legislative enactment. Admittedly, we have confronted instances where the State has abused the statute and sought to have the forensic interviewer, improperly imbued with the imprimatur of an expert witness, invade the province of the jury by vouching for the credibility of the alleged victim. However, this is not such a case. In fact, the forensic interview of the child and mere foundational trial testimony of the interviewer serve as a model of how the statute is designed to work. Specifically, the forensic interviewer did not improperly lead or influence the victim in any way, and the victim answered the questions on her own accord. Moreover, the forensic interviewer's testimony was for the limited purpose of laying the proper foundation for the admission of the videotape.[7] It offered no improper testimony, and included no bolstering testimony that would invade the province of the jury. *Compare State v. Jennings,* 394 S.C. 473, 716 S.E.2d 91 (2011) (finding the trial court erred in admitting portions of forensic interviewer's written reports that went to the victims' veracity for truth regarding the allegations of abuse) *with State v. Douglas,* 380 S.C. 499, 671 S.E.2d 606 (2009) (holding that trial court's admission of testimony from a forensic interviewer did not prejudice defendant as interviewer testified as to her personal observations and did not vouch for the victim's veracity). Thus, there was

---

7. We recognize that the State sought on direct examination to venture into the forbidden area of improper bolstering, but Appellant's objections were promptly sustained.

no error in the admission of the forensic interview into evidence.

## VI.

In sum, we believe the Legislature intended the consent provision in the Wiretap Act to encompass the vicarious consent of a parent on behalf of a minor child. Moreover, there was evidence from which the court of appeals could conclude the parents had a good faith and objectively reasonable basis for recording the phone conversation and, accordingly, the court of appeals did not abuse its discretion in denying the motion to suppress. Additionally, we find no error in the trial court's admission of the forensic interview videotape.

AFFIRMED.

TOAL, C.J., and BEATTY, J., concur.

PLEICONES, J., concurring in a separate opinion in which Acting Justice EUGENE C. GRIFFITH, concurs.

Justice PLEICONES.

I concur with the result reached by the majority but write separately to express my concerns regarding the majority's adoption of the *Pollock* test, which I believe places an undue burden on a parent to justify his vicarious consent on behalf of his child under South Carolina's Wiretap Act. I also write separately regarding the admission of bolstering testimony under S.C.Code Ann. § 17–23–175 (Supp.2010).

## I.

I agree with the majority that the Wiretap Act permits the substitution of a parent's consent for that of a minor who is a party to the communication. However, the *Pollock* test, articulated in *Pollock v. Pollock,* 154 F.3d 601 (6th Cir.1998), and adopted by the majority without alteration, fails to fully account for the scope of parental rights under the United States Constitution.[8]

---

8. The majority believes that consideration of the *Pollock* test's viability post-*Troxel* is not appropriate because this issue has not been raised by

Under the *Pollock* test, "a clear emphasis is put on the need for the 'consenting' parent to demonstrate a good faith, objectively reasonable basis for believing such consent was necessary for the welfare of the child." 154 F.3d at 610. The test is said to "create[ ] *important limitations* on the ability of a parent or guardian to vicariously consent to the recording of his or her child's conversations." *State v. Spencer*, 737 N.W.2d 124, 131 (Iowa 2007) (emphasis added). The "good faith, objectively reasonable basis" limitation in the *Pollock* test was adopted from *Thompson v. Dulaney*, the first case to consider the question whether the federal Wiretap Act should be interpreted to include a vicarious consent exception. 838 F.Supp. 1535 (D.Utah 1993). In *Thompson*, the parent argued that she had a constitutional right to direct the upbringing of her children. However, in finding that a vicarious consent exception was implied in the Wiretap Act, the court based its reasoning on the parent's statutory duty. The court found that in order for the parent to fulfill her duty under a Utah statute to protect her children, she must be able to supervise their communication with third parties, at least when the children are very young, as they were in the case it was considering. *Id.* at 1544. The *Thompson* court did not explain what interests created a need for a limitation on parents' authority to vicariously consent for their children under the federal Wiretap Act. Other courts that have adopted the vicarious consent doctrine have noted in passing that a parent has a constitutional right to guide the upbringing of her children, but they have not directly addressed the constitutionality of the "good faith, objectively reasonable basis" limitation or explained why it is important.

Some commentators have criticized the *Pollock* test for failing to adequately account for a minor's right to privacy.

any party. I do not believe we can avoid considering the implications of *Troxel* on this basis while also explicitly adopting and applying a particular test without qualification. Avoiding Constitutional issues not raised and argued could be dealt with by holding that even if the *Pollock* test is unconstitutionally restrictive, its demands would be met in this case. Moreover, I would respectfully urge that the majority's conclusion that it would adhere to the *Pollock* test after consideration of *Troxel* based on its view that the good faith standard is "a proper and reasonable limitation" under these circumstances is an interest-balancing test of the sort inappropriate for treatment of fundamental rights.

*Spencer*, 737 N.W.2d at 131–32 (citing commentators who raise this concern).  Presumably it is a minor's right to privacy that concerned the *Thompson*, *Pollock*, and other courts and that they sought to protect through the good faith limitation, even though the result does not provide as much privacy to minors as some commentators would desire.

Minors do have some legally recognized right to privacy, most notably the "privacy" of being able to make some choices that are essential to a person's most basic autonomy. *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 899, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992).  In *Casey*, the United States Supreme Court found that under certain narrow circumstances a minor's fundamental right to privacy would be violated by a government-enforced parental veto of the minor's choice.  Aside from the right of a mature minor to make some irreversible and life-altering decisions, however, a minor's interest in privacy has barely been accorded legal recognition.  It has been accorded least recognition vis-á-vis parents.[9]  Moreover, *Casey* involved state action operating to override the choice of a minor with the capacity to make the choice at issue.  That is, insofar as the Constitution protects the privacy interests of minors, it protects them from governmental intrusion, not from parental intrusion unaided by government.

On the other hand, a parent has a right under the Constitution to guide the upbringing of her child.  In *Troxel v. Granville*,[10] decided after both *Thompson* and *Pollock*, the

---

9. *See, e.g.*, Benjamin Shmueli and Ayelet Blecher–Prigat, *Privacy for Children*, 42 Colum.  Hum. Rts. L. Rev. 759, 763, 793, 794 (Spring 2011) (surveying American jurisprudence and concluding that privacy rights "do[ ] not exist for children vis-a-vis their parents"; noting that even the U.N. Convention for the Rights of the Child, "which is the most comprehensive legal document ever written on children's rights, and which brought more than twenty countries around the world to adopt a ban on parental corporal punishment and to grant a plethora of children's rights, has not clarified this children's right"; and acknowledging that legal intervention in this area poses a significant risk of damaging families and "must be very delicate").

10. In *Troxel v. Granville*, a Washington state statute permitted any party to petition for visitation rights and permitted the court to award visitation rights if it concluded that they were in the child's best interest without according any deference to the parent's judgment.  The Court

Court identified as *"fundamental* [the] right of parents to make decisions concerning the care, custody, and control of their children." 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion) (emphasis added). Seven justices agreed that the constitutional right of a parent to direct the upbringing of her child is violated when her judgment regarding the child's associations is not accorded deference by the courts. 530 U.S. at 67, 120 S.Ct. 2054 (plurality), 78–79, 120 S.Ct. 2054 (Souter, J., concurring), 80, 120 S.Ct. 2054 (Thomas, J., concurring), 94, 120 S.Ct. 2054 (Kennedy, J., dissenting). Of course, as with other constitutional rights, the constitutional protection does not confer on parents an unlimited right to control their children, but it limits the extent of governmental involvement in a particular area and places a heavy burden on the state to justify any governmental restriction of parental rights. The Wiretap Act, read without an exception, would substantially restrict parental rights in favor of an interest that has received little if any legal protection in any other context. Read with a limited exception, the Wiretap Act subjects the exercise of parental constitutional rights to substantial state supervision, again in favor of a barely recognized interest. In my view, either of those readings fails to withstand the strict scrutiny ordinarily applied to governmental restrictions on fundamental rights.

*Troxel* concerned the appropriate treatment of parental constitutional rights when a court was reviewing a fit parent's decision regarding the social activities of her child, much as the *Pollock* test involves a court in reviewing a presumptively fit parent's decision regarding the social activities of her child. The plurality opinion in *Troxel* states that the fundamental constitutional right of parents to guide the upbringing of their children mandates "a presumption that fit parents act in the best interests of their children." *Id.* at 68, 120 S.Ct. 2054. The *Pollock* test reverses this presumption by placing the burden of proof on the parent to demonstrate that his motives for recording his child's conversation were proper and based on objectively reasonable concerns. Thus, the *Pollock* test is

found that a mother's substantive due process rights were violated when the state court awarded visitation to the children's paternal grandparents based on its disagreement with the mother regarding the appropriate amount of visitation.

not viable after *Troxel* at least as to its allocation of the burden of proof.

Moreover, I am concerned with the import of the majority's discussion of a child's age and capacity to consent as being relevant to a determination whether a parent's vicarious consent was valid. The majority eschews any bright-line rule based on the minor's age and capacity to consent. Presumably this means that a court reviewing a parent's decision to invade the minor's privacy should deem that decision less objectively reasonable the more mature the minor is. But a sliding-scale test provides such little constraint on courts as to transfer nearly limitless discretion to them to override the judgment of a fit parent, in direct contravention of *Troxel.*

Further militating against the adoption of the *Pollock* test, at question here is a statute that, in the absence of an exception, *criminalizes* a parent's recording of his child's conversation with a third party.[11] Thus, under the Wiretap Act the primary adversarial parties are the government and the parent, not the parent and child or the parent and a third party.[12] Under the *Pollock* test, a parent cannot exercise her fundamental constitutional right to guide the upbringing of her child without risking criminal penalty should a court disbelieve her stated motives, disagree with her assessment of the threat posed by the particular circumstances, or find that the child's age or capacity to consent sufficiently negates the parent's otherwise valid concerns. Such treatment of fundamental rights protected by the Constitution is impermissible. *See, e.g., Casey,* 505 U.S. at 893–95, 112 S.Ct. 2791. The

---

11. A person who violates the provisions of the South Carolina Wiretap Act must be imprisoned not more than five years or fined not more than five thousand dollars, or both. S.C.Code Ann. § 17–30–50 (Supp.2010).

12. The issue typically arises in cases that do not involve the state attempting to prosecute a parent, such as in the present case, in which a third party seeks to have evidence excluded as obtained in violation of the Wiretap Act. The fact that the issue may be raised by a third party does not alter my analysis for two reasons. First, our interpretation of the consent exception will apply in all contexts. Second, one party to a protected communication has no expectation of privacy under the Wiretap Act if the other party consents to recording or disclosure. Thus, the third party's interest in nondisclosure has no bearing on the question whether a parent may vicariously consent on behalf of his child.

majority's rejection of a bright-line rule exacerbates the constitutional problem with the good faith test by creating greater uncertainty for parents of maturing but unemancipated minors in discerning the line between protected and criminalized conduct.

In light of the fact that the Wiretap Act criminalizes violations and that the parental right is fundamental under the Constitution, I do not believe there is room for any qualification of the vicarious consent exception. At the very least, the majority's test must be recast in order to place the burden on the party asserting that the parent's consent was invalid to prove that the parent did not act in good faith or in reliance on objectively reasonable concerns.

## II.

With regard to Appellant's argument regarding impermissible bolstering, I would note that Appellant has not raised a challenge to the statute on constitutional grounds or challenged the admission of the interviewer's testimony or opinions. Rather, Appellant challenges as improper bolstering the admission of duplicative testimony from the child herself via the videotape. I agree with the majority that the Rules of Evidence recognize the authority of the General Assembly to enact statutes that create exceptions to the evidentiary rules. Rule 101, SCRE. Section 17–23–175 by its terms permits the duplication of a child's testimony through the admission of a video recorded interview in addition to the child's testimony in court. Thus, there is no basis for an improper bolstering argument when prior testimony is admitted pursuant to § 17–23–175, and I agree with the majority that the trial judge did not abuse his discretion when he admitted the videotaped interview.

For the reasons set forth above, I would hold that parental vicarious consent satisfies the Wiretap Act's consent exception for all fit parents of unemancipated minors regardless of the minor's age or capacity to consent. I would also modify the discussion of admissibility under § 17–23–175. Because I agree with the result reached by the majority on each issue, I concur in the judgment.

Acting Justice EUGENE C. GRIFFITH, JR., concurs.