JUSTICE KITTREDGE :
*924 **561 This is a case about the amount or weight of an illegal drug. For self-evident reasons, the possession of an illegal drug carries increased penalties as the amount of the drug in the possession of the offender increases. In this case, Petitioner Daniel Herrera was convicted of "trafficking in"-meaning, possessing-between ten and 100 pounds of marijuana, which carries a substantial term of imprisonment. The penalty for possessing fewer than ten pounds of marijuana is less severe. Moreover, drug trafficking is classified as a violent and serious crime, affecting Herrera's parole eligibility now and in the future.[1]
At trial, Herrera contended that he did not knowingly possess any marijuana. Moreover, Herrera disputed the weight of the marijuana-allegedly, ten pounds, 2.78 ounces-by challenging (1) the qualifications of the State's marijuana expert, police officer Jared Hunnicutt, and (2) the accuracy of the purported weight of the marijuana.
Ultimately, Herrera's challenges were unsuccessful, and following his trafficking conviction, the court of appeals affirmed the admission of Hunnicutt's testimony regarding the weight of the marijuana in a summary unpublished opinion. State v. Herrera , Op. No. 2016-UP-424, 2016 WL 5930122 (S.C. Ct. App. filed Oct. 12, 2016). We granted Herrera's petition for a writ of certiorari, and we now reverse, for under the circumstances presented it was an abuse of discretion to permit Hunnicutt to testify to the weight of the marijuana. Accordingly, we reverse the court of appeals and remand to the trial court for a new trial.
I.
Herrera was arrested when he appeared at a post office to claim a package that law enforcement had intercepted. The **562 package contained six bags of suspected marijuana. Herrera was indicted for trafficking in marijuana over ten pounds and less than 100 pounds. At trial, the State attempted to qualify Detective Hunnicutt of the Laurens Police Department as an expert in marijuana analysis. The basis for his alleged expertise came from his experience as a police officer, as well as attending a single course sponsored by the South Carolina Law Enforcement Division. Hunnicutt had never been qualified as a marijuana analyst in General Sessions court prior to his testimony here.
II.
"The appellate court reviews [the] trial [court's] ruling on admissibility of evidence pursuant to an abuse of discretion standard. ..." State v. Torres , 390 S.C. 618, 625, 703 S.E.2d 226, 230 (2010). Similarly, "[t]he trial court's decision to admit expert testimony will not be reversed on appeal absent an abuse of discretion." State v. Price , 368 S.C. 494, 498, 629 S.E.2d 363, 365 (2006). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." State v. Douglas , 369 S.C. 424, 429-30, 632 S.E.2d 845, 848 (2006).
Rule 702 of the South Carolina Rules of Evidence governs the admissibility of expert testimony and provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to *925 understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
Although Hunnicutt's qualifications as an expert present a close question, under our deferential standard of review, we find no abuse of discretion in qualifying him as an expert in marijuana identification. We do, however, find an abuse of discretion in the admission of Hunnicutt's actual testimony, which almost immediately morphed into areas far beyond the mere identification of marijuana, including a purported expertise in marijuana analysis as well as the weight of the drug.
**563 III.
A.
A review of the trial court proceedings leading to Hunnicutt's qualification as an expert is revealing. The trial court diligently vetted Hunnicutt's qualifications as an expert. After allowing the State to proffer the testimony and present its argument, the trial court noted it was "uncomfortable" qualifying Hunnicutt "as an expert for several reasons." The trial court explained its reasoning. This ruling should have ended the matter, but the State would not take "no" for an answer and continued to push the issue. The State contended Hunnicutt's expert qualification could be limited to:
Identification, I think that would be, identification, that is the sole question. In [his] opinion[,] is this marijuana or a bag of lettuce[?] I think he is qualified to do that, I think he is more qualified certainly than the trier of fact in this case. He can help them to understand that this is not oregano in those bags.
The trial court's lingering doubt as to Hunnicutt's qualifications continued, as it told the State, "I don't think you [get] there .... I think some of this I have helped you with and I am [un]comfortable helping you with your proving the case. ... I can't qualify him. ... He is not qualified. ... So, my ruling is I can't qualify him as an expert in the field of marijuana analysis and identification."
While the trial court never wavered from its unwillingness to qualify Hunnicutt broadly, it relented on the State's fallback request to limit Hunnicutt's qualification to identification only. The State asked, "Are you going to allow me to attempt to qualify him in identification of marijuana?" The trial court responded, "Yes, I can do that." While a close question is presented, as noted, in granting wide discretion to the trial court, we find no abuse of discretion in the qualification of Hunnicutt as an expert in marijuana identification. After all, it does not appear that Herrera disputes that the bags contained some marijuana.
The State, however, was not content to limit its questioning of Hunnicutt in line with the trial court's narrow grant of "identification" testimony. More to the point, the State **564 asked Hunnicutt about matters that were beyond the proffered expertise of identification. Hunnicutt was asked whether he "tested" the material and where he performed the "analysis." Herrera, through counsel, repeated his objections and specifically reminded the trial court that Hunnicutt "is an expert in identification only. I don't know why he is talking about testing." The trial court correctly sustained the objection.
Yet the State persisted and elicited testimony of Hunnicutt's analysis of the substance, including its weight, which was performed at the Greenwood County Sheriff's Office. Again, Herrera objected, stressing that his "objection [wa]s this witness [wa]s not qualified to testify to anything regarding testing the marijuana or the weight, he was qualified for identification purposes only." The trial court overruled the objection, which was error.
In essence, the State was permitted to introduce testimony from Hunnicutt that ventured well beyond the "identification" limitation. The State ended up with what it wanted all along, which the trial court properly excluded in its initial ruling.
*926 B.
While there may be situations where non-expert testimony may be admissible on the weight of drugs, the circumstances here demonstrate the need for precision in the exact weight of the drug. See State v. Cain , 224 N.J. 410, 133 A.3d 619, 620 (2016) (finding expert testimony is common in drug cases because it "provides necessary insight into matters that are not commonly understood by the average juror, such as the significance of drug packaging and weight").
There are two related concerns with Hunnicutt's testimony concerning weight. First, he admitted he did not know if the scales of the other agency were calibrated, simply remarking, "that wasn't my scale." See State v. Wallace , 910 P.2d 695, 719 (Haw. 1996) ("[T]he weight of the [drugs] derived from expert testimony that relied upon scientific measurements obtained from calibrated weighing instruments for its accuracy."). Hunnicutt testified he believed the evidence technician at the Greenwood County Sheriff's Office calibrated the scales, but gave no basis for that belief, such as personal knowledge **565 that the evidence technician regularly or recently calibrated the scales so as to make the scale's representation of the weight an accurate calculation. See State v. Manewa , 167 P.3d 336, 346-50 (Haw. 2007) (finding the State laid an inadequate foundation to prove the weight measured was accurate where the expert was not qualified in the calibration of the analytical balance; he did not know how to calibrate the balance; and he had never calibrated the balance); State v. Richardson , 285 Neb. 847, 830 N.W.2d 183, 189-90 (2013) (finding that a more precise foundation regarding the accuracy of the scale was required where the expert did not provide testimony regarding the procedures used to perform a calibration). Similar to these jurisdictions, we find the State laid an inadequate foundation as to the accuracy of the scale, given there was no evidence the scale was properly calibrated. As a result, there was mere speculation in assessing the reliability of the scale, which is patently insufficient under the circumstances presented.
Second, the marijuana was packaged and weighed in six different bags, yet Hunnicutt only weighed one empty bag, and not even one of the bags actually containing the alleged drug . Rather, Hunnicutt chose to weigh a bag he found at the Greenwood County Sheriff's Office which appeared to him to be of similar size and assumed the six actual bags were close to the same weight. This relaxed approach may not be prejudicial in every circumstance, but the prejudice is glaring here. The charge against Herrera was trafficking marijuana ten pounds or more. Even under the State's evidence, the weight of the alleged marijuana was less than three ounces over the ten-pound minimum threshold. See State v. Diaz , 88 N.C.App. 699, 365 S.E.2d 7, 9 (1988) (explaining the weight element becomes more critical if the State's evidence approaches the minimum weight charged, but that it was a non-issue in the case because the weight exceeded the minimum statutory weight by more than 30,000 pounds (citation omitted) ). We believe Hunnicutt's method of weighing a single baggie he viewed as similar to the actual bags containing the marijuana was an unreliable means for weighing the marijuana where, as in this case, the charged weight was barely over the ten-pound minimum threshold.
**566 IV.
We hold the court of appeals erred in affirming the trial court's admission of Hunnicutt's testimony beyond the narrow parameters of identification of marijuana. Herrera's objection to the testimony concerning weight should have been sustained. As a result, we reverse Herrera's conviction and sentence for trafficking in marijuana and remand for a new trial.
REVERSED AND REMANDED.
BEATTY, C.J., HEARN, FEW and JAMES, JJ., concur.

See S.C. Code Ann. § 16-1-60 (Supp. 2018) (listing drug trafficking under section 44-53-370(e) as a violent crime); id. § 24-21-610 (2007) (requiring those convicted of a violent crime to serve one-third of their sentence as opposed to serving one-fourth); id. § 17-25-45(B), (C)(2) (2014 & Supp. 2018) (listing drug trafficking under section 44-53-370(e) as a serious offense and requiring the imposition of a sentence of life without parole if that individual has two or more previous convictions for serious offenses).