# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Wanda Jane Crumpton, Appellant.

Appellate Case No. 2019-001246

———————

Appeal From Pickens County
Robin B. Stilwell, Circuit Court Judge

———————

Opinion No. 6075
Heard June 7, 2022 – Filed July 31, 2024

———————

## REVERSED

———————

Appellate Defender Joanna Katherine Delany, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Senior
Assistant Deputy Attorney General Mark R. Farthing,
both of Columbia, and Solicitor William Walter Wilkins,
III, of Greenville, all for Respondent.

———————

**MCDONALD, J.:** In this case, we are asked to consider whether an expert witness
may identify a substance as marijuana after admittedly using a testing protocol the
South Carolina Law Enforcement Division (SLED) deemed unreliable several
months before the defendant's trial. The circuit court admitted such testimony in
Wanda Crumpton's trial, and she was convicted of possession of marijuana with
intent to distribute and distribution of marijuana within close proximity of a school
or park. Crumpton challenges her convictions, arguing the circuit court erred in (1)

allowing the witness to identify the substance as marijuana; (2) ignoring Rule 702's gatekeeping requirements; and (3) admitting into evidence the expert's report. We reverse the convictions.

**Facts and Procedural History**

In 2017, the Easley Police Department (EPD) began to surveil Crumpton's neighborhood after receiving citizen complaints about heavy traffic in the area. During its March 20 surveillance, EPD observed people, including Kerek Harris—who was already the subject of a separate EPD investigation—visiting Crumpton.

The following day, EPD narcotics officers executed a search warrant at Harris's home. Harris cooperated with the search—he told officers the location of his cell phone, cash, and marijuana; he also completed a consent to search form to allow law enforcement to access his phone. Officers recovered approximately five pounds of marijuana in five separate gallon-sized bags and almost six thousand dollars in cash from the search of Harris's home.

Based on information Harris provided, the officers next obtained a warrant to search Crumpton's home for drugs. EPD Narcotics Officer Jonathan Hamby testified that when officers arrived to execute the warrant, Crumpton was sitting in her recliner, and she allowed them in to search. As they explained the search warrant to her, Crumpton asked if she could just show the officers "where the drugs were." She then directed them to a kitchen cabinet and a small bag containing a green leafy substance. Officer Hamby also asked Crumpton "about any scales she would have to weigh the marijuana out with. She admitted she had scales and pulled out a cabinet drawer on the bottom where her scales were located." The officers seized the bag of plant material, $534 in cash, a cell phone, food storage baggies, and the kitchen scales. They also retrieved a partially smoked joint from Crumpton's recliner.

A Pickens County grand jury indicted Crumpton for possession of marijuana with intent to distribute and a proximity charge. She was convicted on both counts, and the circuit court sentenced her to forty-two months, concurrent, on each charge.[1]

**Standard of Review**

---

[1] Crumpton had already served her sentences at the time of oral argument.

Appellate courts review trial court rulings on the admissibility of evidence pursuant to an abuse of discretion standard. *State v. Herrera*, 425 S.C. 558, 562, 823 S.E.2d 923, 924 (2019). A circuit court's "decision to admit expert testimony will not be reversed on appeal absent an abuse of discretion." *Id*. (quoting *State v. Price*, 368 S.C. 494, 498, 629 S.E.2d 363, 365 (2006)). "An abuse of discretion occurs when the conclusions of the circuit court are either controlled by an error of law or are based on unsupported factual conclusions." *State v. Chavis*, 412 S.C. 101, 106, 771 S.E.2d 336, 338 (2015).

**Analysis**

**I. Expert testimony**

The State offered retired EPD Sergeant Robert Brian Cowan as its expert in marijuana analysis. Cowan began working in law enforcement in 1994 and worked for EPD for twenty-five years; he was an evidence technician for eighteen. In January 2002, Cowan completed SLED's Marijuana Analyst Certification program and became a certified marijuana analyst. However, on December 14, 2018—seven months before Crumpton's trial—SLED revoked all certifications awarded pursuant to this program. SLED also sent a notice advising law enforcement agencies and certified individuals to cease using the program's testing procedures because the tests could not differentiate between illegal marijuana and industrial hemp, which may legally contain up to three-tenths of a percent of THC, the main psychoactive ingredient in marijuana. The SLED notice stated, in pertinent part:

> Effective immediately, the SLED Forensic Services Laboratory is discontinuing the Marijuana Analyst Certification/Recertification and Testing programs. Subsequently, all law enforcement officers currently certified under the SLED Marijuana Analyst Program (Program) should discontinue testing plant material. Be advised that SLED has researched this issue extensively and has determined that due to the creation of the Industrial Hemp Program, the Marijuana Testing procedures covered in this Program (microscopic analysis and Duquenois-Levine chemical spot test) cannot differentiate between Industrial Hemp and Marijuana. In accordance with S.C. Code Ann. § 46-55-10, Industrial Hemp is defined as Cannabis that

contains not more than 0.3 percent of delta-9-tetra-hydrocannabinol (THC) on a dry weight basis, and S.C. Code Ann. § 46-55-50 states that Industrial Hemp "is excluded from the definition of marijuana in S.C. Code Ann. § 46-53-110[."]  However, all Cannabis plant material that contains greater than 0.3 percent of THC on a dry weight basis is still considered Marijuana and punishable accordingly.  SLED's decision to discontinue the Program should not in any way be considered a change or alteration to the way that probable cause is determined in the State of South Carolina for any and all drug charges, including Marijuana.

However, in terms of confirmatory testing, in order to accurately analyze plant material and verify the THC level to distinguish between Industrial Hemp and Marijuana, cases will need to be submitted to the SLED Drug Analysis laboratory for quantitative analysis of THC.

Crumpton filed separate written objections to the admission of Sergeant Cowan's "Marijuana Analysis" and his qualification as a "Marijuana Expert."  In the written objection to Cowan's analysis, Crumpton argued,

An actual test of the substance is required to make sure the alleged substance is in fact contraband[.]  Rule 6, SCRCrimP.[2]  The Rules of Criminal Procedure set forth

---

[2] Rule 6 addresses chemical analyses and chain of custody in drug cases.  It provides, in pertinent part, that for the purpose of establishing the physical evidence of a controlled substance or other substance regulated by Title 44, Chapter 53,

a report signed by the chemist or analyst who performed the test or tests required concerning its nature shall be evidence that the material delivered to him or her was properly tested under procedures approved by the State Law Enforcement Division (SLED), that those procedures are legally reliable and that the material is or contains the substance or substances stated.

that requirement thereby making it an essential part of the due process of law in every drug case. Stated concisely, Rule 6 requires three elements: 1) A proper test, 2) A legally reliable test, and 3) An opinion as to the identity of the substance.

Pretrial, the circuit court addressed Crumpton's objections to the validity of the search warrant and the admissibility of Harris's testimony and text messages regarding Crumpton's prior purchases from him. Crumpton challenged the evidence of any such prior purchases, arguing it was inadmissible under Rules 403 and 404(b), SCRE.[3] Although the circuit court found Harris's testimony was admissible, the court declined to admit his text messages. The circuit court further found probable cause existed to support the magistrate's issuance of the search warrant. The circuit court did not, however, address Crumpton's pretrial challenge to the expert's testimony, presumably because her trial counsel stated, "And when it comes up, we're going to be objecting to the expert."

After two law enforcement witnesses and Harris testified, the State called Sergeant Cowan. As Cowan began to testify about the marijuana testing process he used, Crumpton objected, stating, "Judge, I'm going to—I'd like to object to his—I'm not sure how to put it. May we approach, please?" The circuit court responded:

THE COURT: Yeah, I think I know what you're saying. You want to object to his qualifications as an expert; is that correct?

MR. KING: I do, and I'm not sure we need to get into the testing procedure until we get over that hurdle.

THE COURT: Okay. I'm going to allow you to voir dire on the record in open court. One of the tests [is] not only whether he is qualified as an expert, but also that [the] methodology is an accepted and recognized scientific method. So I think all of this goes to whether that evidence is admissible or not. I suspect that you're going

---

[3] Rule 403 addresses the exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time; Rule 404(b) addresses evidence of other crimes or bad acts.

> to want to voir dire him with respect to methodology as well.
>
> MR. KING: That's correct, Your Honor. I apologize. I just want to get a ruling on where we're going.
>
> THE COURT: I got you. I got you. Okay, you can proceed.

With the jury still present, the State asked Cowan how he tested for marijuana, and he explained his testing methods, noting he had "analyzed probably roughly 1600 cases" from 2010 until 2018. The State then moved to qualify Cowan an expert in "chemical analysis for marijuana." The circuit court gave a brief instruction on expert witnesses and told the jury that the purpose of giving the defense the opportunity to question such a witness is "to determine whether, in fact, they are qualified, and whether the methodology is appropriate."

The defense then questioned Cowan about SLED's termination of the marijuana handling, certification, and testing program. Cowan discussed the December 2018 SLED announcement and explained "they are saying they cannot differentiate between industrial hemp and marijuana." Cowan admitted the test he performed could not quantify a substance's THC level and "it was just positive or negative."

Defense counsel again objected to Cowan being qualified as an expert and asked to make the SLED notice a court's exhibit. He continued:

> MR. KING: Would you like to hear my argument now?
>
> THE COURT: Yes.
>
> MR. KING: Or do that outside the presence of the jury?
>
> THE COURT: If we're talking about the qualifications of this expert witness, I'm happy to hear from you right now.

At no point during this discussion was the jury excused, and the arguments conducted in the jury's presence continue for four pages in the trial transcript. Crumpton argued Cowan's testing method was not reliable under Rule 702, and the State responded that Cowan tested the substance using the SLED protocol in effect

at the time of the testing.  The State further argued that when Crumpton's substance was tested in 2017, SLED's procedures were the standard for testing substances believed to contain marijuana, noting SLED had not instructed law enforcement agencies regarding the reliability of prior test results.  The State continued, rather inaccurately:

> In December of 2018 is when they asked law enforcement to stop performing this test.  It doesn't say anything about any of the tests previously being unreliable or that they were to be thrown out or that they meet the minimum threshold, Your Honor.  At this point in time, it was still marijuana . . . .  Yes, they are no longer using that test, but it was still reliable at the time of the test, Your Honor.

In the presence of the jury and without further inquiry or analysis, the circuit court qualified Cowan as an expert and declared the reliability of the testing method was a jury question.  In overruling Crumpton's objection, the circuit court stated,

> When I charge the jury as to the law, the question is going to be marijuana.  Hemp is not part of the equation.  Okay?  And, the State, it has to be proven beyond a reasonable doubt that she possessed marijuana with intent to distribute the same.  Okay?
>
> So, with respect to his qualification as an expert witness, I will allow him to testify as an expert witness.
>
> Now, the reliability of the testing procedure is a matter to be determined by the jury.  They will weigh the credibility of the witness's testimony, and determine, in fact, whether it should be relied upon or not in their capacity as the finders of fact.
>
> So, Ladies and Gentlemen, this gentleman is being offered as an expert witness . . . .

The circuit court then completed its instruction as to the role of an expert witness, and Cowan identified the marijuana analysis form containing his test result.  Although Cowan found the seized substance contained THC, he could not say

whether the substance was actually marijuana as opposed to industrial hemp. Nor could he determine whether the THC level of the substance was over 0.3% because the now-defunct procedure used could detect only the existence of THC, not a THC level. Despite this, Cowan testified he found nineteen grams, or 0.66 ounces, of marijuana.

Crumpton argues Cowan's testimony identifying the substance as marijuana was inadmissible because SLED had previously deemed unreliable the testing protocol Cowan used to identify it.[4] More fundamentally, Crumpton contends the circuit court erred in finding Cowan's reliability was an issue for the jury because Rule 702, SCRE, requires the circuit court to conduct this gatekeeping function outside the presence of the jury **before** permitting the offered expert to testify. *See e.g.*, *State v. Tapp*, 398 S.C. 376, 388, 728 S.E.2d 468, 474 (2012) ("The familiar evidentiary mantra that a challenge to evidence goes to 'weight, not admissibility' may be invoked only after the trial judge has vetted the matters of qualification and reliability and admitted the evidence." (quoting *State v. White*, 382 S.C. 265, 274, 676 S.E.2d 684, 689 (2009))).

"'Scientific evidence is admissible under Rule 702, SCRE,'[5] when '(1) the evidence will assist the trier of fact; (2) the expert witness is qualified; (3) the underlying science is reliable . . . ; and (4) the probative value of the evidence outweighs its prejudicial effect.'" *State v. Mealor*, 425 S.C. 625, 647, 825 S.E.2d 53, 65 (Ct. App. 2019) (quoting *State v. Jones*, 343 S.C. 562, 572, 541 S.E.2d 813, 818 (2001)). "All expert testimony must satisfy the Rule 702 criteria, and that includes the trial court's gatekeeping function in ensuring the proposed expert testimony meets a reliability threshold for the jury's ultimate consideration." *White*, 382 S.C. at 270, 676 S.E.2d at 686. "Reliability is a central feature of Rule 702 admissibility, and our jurisprudence is in complete accord." *Id.*

---

[4] Crumpton initially argued the circuit court erred in finding Sergeant Cowan was sufficiently qualified and in failing to properly analyze reliability; however, at oral argument, she acknowledged Cowan's qualifications and focused on the circuit court's failure to vet reliability.

[5] Rule 702 provides that where "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Rule 702, SCRE.

When Cowan tested this substance in 2017, section 46-55-50 already excluded industrial hemp from section 44-53-110's definition of marijuana. *See* Act No. 216, 2014 S.C. Acts 2317–20 (legalizing the growing of industrial hemp and excluding it from the definition of marijuana); Act No. 37, 2017 S.C. Acts 149–54 (amending industrial hemp statutes and renumbering the code section excluding industrial hemp from the definition of marijuana). In 2019, the General Assembly amended Chapter 55 of Title 46 upon passing "The Hemp Farming Act" to address industrial hemp licenses and Cannabidiol (CBD). Section 46-55-10(8) was also amended; it now states:

> 'Hemp' or 'industrial hemp' means the plant Cannabis sativa L. and any part of that plant, including the nonsterilized seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with the federally defined THC level for hemp. Hemp shall be considered an agricultural commodity.

"'Federally defined THC level for hemp' means a delta-9 THC concentration of not more than 0.3 percent on a dry weight basis, or the THC concentration for hemp defined in 7 U.S.C. SECTION 5940, whichever is greater." S.C. Code Ann. § 46-55-10(6) (Supp. 2023).

Crumpton properly emphasizes that the qualifications of a proposed expert and the reliability of the expert's methods are distinct requirements for admissibility. *See Tapp*, 398 S.C. at 388, 728 S.E.2d at 474–75 ("To be clear, the reliability of a witness's testimony is not a pre-requisite to determining whether or not the witness is an expert. The expertise, reliability, and the ability of the testimony to assist the trier of fact are all threshold determinations to be made prior to the admission of expert testimony, and generally, a witness's expert status will be determined prior to determining the reliability of the testimony."). Cowan began his law enforcement career in 1994, he worked for EPD for twenty-five years, and he was an evidence technician for eighteen. He was previously certified as a marijuana analyst by SLED (before the program was revoked), and from 2010—when he began keeping track—through 2019, he analyzed approximately 1600 samples. Therefore, we find the circuit court acted within its discretion in finding Sergeant Cowan had the qualifications necessary to testify as an expert.

But the circuit court clearly erred in admitting Cowan's testimony because his analysis was based on a testing method SLED itself had deemed unreliable some seven months before Crumpton's trial. And, in addition to conducting the reliability arguments in the jury's presence, the circuit court erroneously declared the initial reliability determination was an issue for the jury. Our appellate courts have long cautioned that the reliability of an expert's testimony is a threshold gatekeeping matter for the court. *See id.* at 388, 728 S.E.2d at 474 ("The familiar evidentiary mantra that a challenge to evidence goes to 'weight, not admissibility' may be invoked only after the trial judge has vetted the matters of qualification and reliability and admitted the evidence." (quoting *White*, 382 S.C. at 274, 676 S.E.2d at 689)). As declared in SLED's notice and by Cowan's own admission, the testing method used here could not differentiate between legal industrial hemp and illegal marijuana. The fact that this methodology was acceptable in the past is irrelevant.

## II. Harmless Error

The State next asserts any error by the circuit court in admitting Cowan's testimony was harmless. We disagree.

"Generally, appellate courts will not set aside convictions due to insubstantial errors not affecting the result." *State v. Pagan*, 369 S.C. 201, 212, 631 S.E.2d 262, 267 (2006). "The harmless error rule generally provides that an error is harmless beyond a reasonable doubt if it did not contribute to the verdict obtained." *State v. Collins*, 409 S.C. 524, 537, 763 S.E.2d 22, 29 (2014). "As part of our harmless error analysis, we review 'the materiality and prejudicial character of the error' in the context of the entire trial." *State v. Phillips*, 430 S.C. 319, 342, 844 S.E.2d 651, 663 (2020) (quoting *State v. Byers*, 392 S.C. 438, 447-48, 710 S.E.2d 55, 60 (2011)).

Harris testified he sold marijuana, typically two ounces, to Crumpton eleven different times between March 11 and 21, 2017. Cowan subsequently identified the seized substance, found it weighed nineteen grams (0.66 ounces), and described in detail the obsolete testing procedure he used to identify the plant material as marijuana and determine its weight.

Sergeant Cowan's testimony about the admittedly unreliable testing method was undoubtedly problematic, but we also cannot ignore the effect the arguments addressing Sergeant Cowan's qualifications and the matter of reliability may have had on the jury. These arguments should have been made on the record, outside of the jury's presence, *before* the circuit court qualified Sergeant Cowan as an expert.

And, certainly, the jury should have been removed before any threshold question of reliability was discussed. The circuit court's reference to "the familiar evidentiary mantra" regarding the weight of such testimony and its declaration that "[h]emp is not part of the equation" further compounded this prejudice.

Notably, although law enforcement seized scales and baggies and a partially smoked joint from Crumpton's home, Detective Hamby admitted officers attempted, but were unable to execute, a controlled buy from her, and no witness testified they purchased (or otherwise obtained) drugs from Crumpton. Thus, the identification of the substance seized from her trailer was critical to her conviction.

"Improper 'expert' evidence which goes to the heart of the case is not harmless." *Tapp*, 398 S.C. at 393, 728 S.E.2d at 477 (Pleicones, J., dissenting). Similarly, a police "officer's improper opinion which goes to the heart of the case is not harmless." *State v. Ellis,* 345 S.C. 175, 178, 547 S.E.2d 490, 491 (2001). Sergeant Cowan provided the only scientific testimony identifying the seized substance as marijuana, and he did so after the circuit court conducted the reliability arguments in the presence of the jury. As our supreme court has recognized, "although an expert's testimony theoretically is to be given no more weight by a jury than any other witness, it is an inescapable fact that jurors can have a tendency to attach more significance to the testimony of experts." *State v. Kromah*, 401 S.C. 340, 357, 737 S.E.2d 490, 499 (2013); *see also State v. Whitner*, 399 S.C. 547, 559, 732 S.E.2d 861, 867 (2012) (referencing vouching by a forensic interviewer as "improperly imbued with the imprimatur of an expert witness").

The State's other evidence included testimony from Harris and from the police officers who admittedly were unable to complete a successful controlled buy from Crumpton.[6] Still, the officers also testified Crumpton voluntarily showed them

---

[6] Harris was undoubtedly the bigger fish—he admitted he repeatedly sold Crumpton marijuana in relatively small amounts in the days leading up to her arrest. In addition to the five gallon-sized bags of marijuana and nearly six thousand dollars in cash seized from his home, officers found photographs of a firearm on Harris's cell phone. Harris admitted he owned the firearm despite his status as a convicted felon. He also testified that due to the seizure of the five pounds "and some ounces" of marijuana, he was charged with four counts of second offense possession with intent to distribute. While each of those four counts carried a potential ten-year sentence, Harris was sentenced to probation and ordered to attend a drug class.

where she kept "the drugs" when EPD arrived to search her home.[7]  Nevertheless, because we cannot say beyond a reasonable doubt that the errors here did not contribute to the verdicts, the errors cannot be harmless.

**Conclusion**

Based on the foregoing, Crumpton's convictions are reversed.

**REVERSED.**

**THOMAS and HEWITT, JJ., concur.**

---

[7] The State asserts Crumpton's own admission to the circuit court that she possessed marijuana further supports a finding of harmless error.  But Crumpton's admission occurred pretrial, and she merely noted she "smoked it"—she never admitted she sold drugs or provided marijuana to others.  The State further argues defense counsel's opening statements referencing Crumpton's "personal use," admitting "she had a small amount of marijuana, less than an ounce," and asking the jury to "look for the blunt" officers found in her easy chair mandate a finding of harmless error.  We disagree.  Such statements by Crumpton's attorney certainly may have mitigated the prejudice, but we cannot say beyond a reasonable doubt that the verdicts here were not influenced by the circuit court's decisions to forego a proper gatekeeping analysis, conduct the Rule 702 arguments in the jury's presence, and admit Cowan's testimony and analysis report.